STATE OF NEW JERSEY AND BOARD OF PUBLIC UTILITY COMMISSIONERS, PLAINTIFF-RESPONDENTS, v. EAST SHORES, INC.; MRS. E. CONDIT; ROBERT CHEW; JOSEPH WODZIAK; J. ATKINSON; JOSEPHINE BENEDICT; SOUTH ORANGE FEDERAL SAVINGS BANK, A NEW JERSEY CORPORATION; JAMES TIBUS, AND WILLIAM DONZIESER, DEFENDANTS, AND THE TOWNSHIP. OF JEFFERSON, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 5, 1978—Decided January 8, 1979.

Before Judges LYNCH, CRANE and HORN.

*Mr. James M. Kenihan* argued the cause for appellant (*Messrs. Kenihan & Cohen,* attorneys).

*Ms. Blossom A. Peretz,* Deputy Attorney General, argued the cause for respondents (*Mr. John J. Degnan,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. Stephen B. Genzer,* Assistant Deputy Public Advocate, argued the cause as *amicus curiae* (*Mr. Stanley C. Van Ness,* Public Advocate, attorney).

*Mr. Barry H. Evenchick* argued the cause for customers of East Shores, Inc.

The opinion of the court was delivered by

HORN, J. A. D. This is an appeal by defendant Township of Jefferson (township) from a judgment entered in the Chancery Division in accordance with the opinion rendered by Judge Polow and reported at 154 *N. J. Super.* 57 (1977).

Since the operative factual findings of Judge Polow are not claimed to be erroneous, we need not repeat them. It

suffices to state that some 285 residences in the township are presently being supplied with impure and unpotable water. This condition has existed since at least July 20, 1970, when the State Department of Environmental Protection ordered that all drinking water supplied by East Shores, Inc. be boiled. There is a strong likelihood that the receiver of East Shores, Inc. may not be able to continue the water supply, such as it is, for much longer. In sum, the occupants of the affected houses have been laboring under the handicap of receiving impure water for over eight years, and unless relief is forthcoming they will lose even the present inadequate and unpotable water services.

As Judge Polow stated in his opinion, the health and welfare of the affected occupants are at issue, for without water the houses will become uninhabitable and the unwholesome conditions will be exacerbated.

The final judgment, entered following a summary hearing, directed the township to submit to the trial court a plan "for fulfilling its obligation to assure the provision of adequate, potable water supply to the affected residents" by January 15, 1978 or, in default of the submission of such an acceptable plan, "to take over, operate and rehabilitate the East Shores water system."

The township lists three reasons why we should overturn said judgment. These are: (1) the judge erred in deciding the cause in a summary manner; (2) two earlier referenda as to the township's acquisition of the water and/or sewer facilities within the township were defeated and these referenda are "binding upon the municipality and may not be disregarded," and (3) a court of equity is without power or authority to compel the township to take over and operate the local water utility based upon the township's failure to otherwise arrange to supply the resident customers of the water company with an adequate potable water supply.

## I

Defendant urges that ordinarily a plenary hearing must be afforded litigants where critical fact issues are present. This is especially so "when important issues involving highly significant policy considerations are involved and where the ruling which is sought would * * * reach far beyond the particular case." *Lusardi v. Curtis Point Prop. Owners Ass'n,* 138 *N. J. Super.* 44, 51 (App. Div. 1975). This quoted language, adapted from that contained in *Jackson v. Muhlenberg Hosp.,* 53 *N. J.* 138, 141-142 (1969), does not further defendant's contention that a plenary hearing was required in the instant case. It merely points up the need for a plenary hearing where there are contested issues of fact. It accentuates such need when there are important and far-reaching public issues. But these cases do not hold that there should be a plenary hearing when there are no contested critical fact issues which must be resolved. None of our rules which permit either summary judgment or other summary disposition distinguishes between "important issues" and other kinds, if there are other kinds.

The factfindings made by the trial judge, cited by defendant township as requiring a plenary hearing, are neither seriously contested nor critical. The judgment as modified by us could well stand on the foundation of those facts which stand uncontroverted.

## II

The negative votes on the referenda as to the township's supplying water occurred in 1972 and 1974. The township is governed by the Faulkner Act, Mayor-Council Plan E, *N. J. S. A.* 40 :69A-68 *et al. N. J. S. A.* 40 :69A-185 applies to the Mayor-Council Plan E as well as to all Faulkner Act plans. Defendant's argument on this point focuses upon that section which, insofar as is pertinent to this issue, provides:

The voters shall also have the power of referendum which is the power to approve or reject at the polls any ordinance submitted by the council to the voters or any ordinance passed by the council, against which a referendum petition has been filed as herein provided. * * *

Apart from the trial judge's response to this contention (154 *N. J. Super.* at 68), we are of the view that in the circumstances confronting the township the apparent breadth of this statute may not block municipal action which must be taken in order to insure the health and welfare of its residents. As stated by Judge Polow (154 *N. J. Super.* at 62), the township possesses inherent police power. In our discussion of defendant's third point we elaborate on this theme.

In any event, although statutory provisions for initiative and referendum as to municipal ordinances are generally liberally construed because of their salutary objectives, our courts have demonstrated that the apparently unlimited power of referendum under this and similar laws was never intended to permit the voters to prevent the enactment of ordinances "as to which a contrary legislative purpose may be discerned, whether express or implied." *In re Certain Petitions for Binding Referendum,* 154 *N. J. Super.* 482, 485 (App. Div. 1977). There Judge Conford referred to a variety of instances where our courts have held that initiative and referendum statutes are inapplicable. We are satisfied that where an emergency exists, such as that which involves the health and welfare of the affected residents in this case, it was never intended that the positive duty of the municipality to act toward providing relief may be interdicted by a referendum under *N. J. S. A.* 40:69A–185, notwithstanding the lack of any express exemption therefrom. *Cf.* 62 *C. J. S. Municipal Corporations* § 454 at 874.

### III

■■ Defendant's final point challenges the court's authority to compel the municipality to "take over and operate a

local water utility." For the reasons stated by us in connection with our treatment of the final judgment which follows, we prefer to consider the issue in a broader vien — *i. e.*, the authority of the court to compel the municipality to take some action to furnish an adequate and potable water supply for its deprived residents.

Home rule is basic in our government. It embodies the principle that the police power of the State may be invested in local government to enable local government to discharge its role as an arm or agency of the State and to meet other needs of the community. *Bergen County v. Port of New York Authority*, 32 *N. J.* 303, 312–314 (1960) ; 56 *Am. Jur.* 2d, *Municipal Corporations*, § 23, pp. 87–88. [*Inganamort v. Fort Lee*, 62 *N. J.* 521, 528 (1973)]

See also *Visidor Corp. v. Cliffside Park*, 48 *N. J.* 214, 221 (1966). Municipalities differ from counties in that

* * * [W]hereas a municipality was created upon the request or with the consent of the inhabitants to act both as a body politic on behalf of the State and also as a representative of the inhabitants for their local convenience in its so-called corporate or proprietary capacity, the county on the other hand was created by the State without regard to local wishes and solely to serve as a body politic. * * * [*Bergen Cty. v. Port of N. Y. Auth.*, 32 *N. J.* 303, 312; citations omitted]

■ A municipality, at least as to contracts to which it is a party, occupies the position of a trustee for its inhabitants, and "it is its plain duty to protect the rights of [its] inhabitants * * *, the public, the community * * *." *Boonton Mayor, etc. v. Boonton Water Co.*, 69 *N. J. Eq.* 23, 24 (Ch. 1905), aff'd 70 *N. J. Eq.* 692 (E. & A. 1906). We see no reason why this "plain duty" should not extend to protect all the public rights of the residents of the municipality.

As mentioned by the trial judge, *N. J. S. A.* 40 :62–47 authorizes municipalities to provide water for their inhabitants. That the providing of pure water is of utmost importance is demonstrated by several legislative declarations of

policy. Thus: "[T]he protection and preservation of these lands and waters promotes the health, safety and welfare of the people * * *." *N. J. S. A.* 58:10-23.11a. "It is the policy of this State to restore, enhance and maintain the chemical, physical, and biological integrity of its waters, to protect public health * * *." *N. J. S. A.* 58:10A-2. "The Legislature finds that the people of [this] State have a paramount interest in the restoration, maintenance and preservation of the quality of the waters of the State for the protection and preservation of public health and welfare * * *." *N. J. S. A.* 58:11A-2. See also, *N. J. S. A.* 58:12A-2; *N. J. S. A.* 58:4-1; *N. J. S. A.* 58:12-2, and *Health Dept. v. Owens-Corning Fiberglas Corp.*, 100 *N. J. Super.* 366, 381 (App. Div. 1968), aff'd 53 *N. J.* 248 (1969); *West Caldwell v. Caldwell*, 26 *N. J.* 9, 30 (1958); *Bayshore Sew. Co. v. Environmental Protect. Dep't*, 131 *N. J. Super.* 37 (App. Div. 1974), aff'g o.b. 122 *N. J. Super.* 184 (Ch. Div. 1973); *State v. North Jersey Dist. Water Supply Comm'n*, 127 *N. J. Super.* 251 (App. Div. 1974); *Passaic Val. Sewerage Comm'n v. Paterson*, 107 *N. J. Super.* 436 (Law Div. 1969), aff'd 113 *N. J. Super.* 148 (App. Div. 1971).

We have referred to *Inganamort v. Fort Lee, supra.* There the Supreme Court held that the power of municipalities to deal with rental emergencies was conferred by reason of *N. J. Const.* (1947) Art. IV, § 7, par. 11, requiring that the Constitution and "any law concerning municipal corporations * * * shall be liberally construed in their favor," and *N. J. S. A.* 40:69A-30 of the Optional Municipal Charter Law, which law is applicable to defendant. See 62 *N. J.* at 534-536. This reasoning is equally applicable to the power of the municipality to deal with the present emergency due to the lack of potable water.

This holding is consistent with other authority. In 13 *McQuillin, Municipal Corporations* (3 ed. 1971), § 37.04 at 22, it is stated:

It has also been said that one of the paramount' obligations of a municipality is to furnish its citizens (as far as possible) with a sufficient supply of water, not only for the public health, but for the public safety as well, in order to afford the means of extinguishing fires and preventing conflagrations. A municipal corporation when exerting its functions for the public good cannot be shorn of its powers by implication. If in particular circumstances it is sought to restrict the exercise of a municipality's public powers, the right to do so must be manifest in clear and unmistakable terms.

In support of its argument that the trial judge lacked powers to compel it to take measures in relief of the affected residents, defendant refers to expressions in various of our cases which appear to hold that the distribution of water by a municipality to its inhabitants is a private or proprietary function. Somewhat typically, *Reid Development Corp. v. Parsippany-Troy Hills Tp.*, 10 *N. J.* 229 (1952), declared that:

> There are cases holding that the establishment of a water system and its operation for protection against fire and other dangers to the public health and safety constitute a governmental function comprehended in the police power of the municipality. *City of Chicago v. Ames*, 365 *Ill.* 529, 7 *N. E.* 2d 294, 109 *A. L. R.* 1509 (*Sup. Ct.* 1937) ; *Canavan v. City of Mechanicville*, 229 *N. Y.* 473, 128 *N. E.* 882 (*Ct. App.* 1920). But there is a general agreement that the distribution of water by a municipality to its inhabitants for domestic and commercial uses is a private or proprietary function which in its exercise is subject to the rules applicable to private corporations. This is the rule in New Jersey. [at 233; some citations omitted]

See also, *Divan Builders v. Wayne Tp. Planning Bd.*, 122 *N. J. Super.* 508, 514 (Law Div. 1973), aff'd 127 *N. J. Super.* 368 (App. Div. 1974), rev'd on other grds., 66 *N. J.* 582 (1975) ; *Washington Tp. v. Ridgewood*, 46 *N. J. Super.* 152, 156 (Ch. Div. 1957), aff'd 26 *N. J.* 578 (1958)) ; *East Orange v. East Orange Bd. of Water Com'rs*, 73 *N. J. Super.* 440, 460 (Law Div. 1962), aff'd 40 *N. J.* 334 (1963).

It is difficult for us to accept a thesis that providing water for the protection against fire and other dangers is a municipal function but that providing water for domestic use

is not. A careful reading of the full text of *Reid Development Corp. v. Parsippany-Troy Hills Tp., supra,* does not indicate that the inherent obligation of a municipality to provide for its residents' domestic water requirements is denigrated. This case and others cited therein, as well as those which followed it, were not concerned with the welfare of householders whose supply of potable water had ceased to exist. The observation of Chief Justice Weintraub in *Washington Tp. v. Ridgewood, supra,* is particularly apt. He said:

We cannot agree that the distinction between governmental and proprietary functions is relevant to this controversy. The distinction is illusory; whatever local government is authorized to do constitutes a function of government, and when a municipality acts pursuant to granted authority it acts as government and not as a private entrepreneur. The distinction has proved useful to restrain the ancient concept of municipal tort immunity, not because of any logic in the distinction, but rather because sound policy dictated that governmental immunity should not envelop the many activities which government today pursues to meet the needs of the citizens. *Cloyes v. Delaware Township*, 23 *N. J.* 324 (1957). We see no connection between that classification and the problem before us. Surely the supply of water cannot be deemed to be a second-class activity in the scheme of municipal functions. Nor is it significant that the municipality serves areas in addition to its own, for from the nature of the subject, cooperative action among municipalities is imperative and consonant with the governmental nature of the activity. [26 *N. J.* at 584]

See also, *K. S. B. Tech. Sales v. North Jersey Dist. Water Supply,* 75 *N. J.* 272, 287–288 (1977).

■ Concluding as we do that Judge Polow had the authority to compel the municipality to take action to furnish relief for its affected residents, we turn to one phase of the opinion with which we cannot agree and as to which defendant suggested that the judge's finding of fact could not be found without a plenary hearing. This is as to the matter of estoppel of the township (154 *N. J. Super.* at 67). We are of the view that the record is deficient in furnishing a substantial basis for holding that the township's conduct should be the basis of an estoppel. Whatever the township

did or failed to do, even as mentioned by the trial judge, was at a time when there could have been no foretelling of the problems which arose and caused the emergency.

Governing bodies also learn by experience. When the East Shores development was permitted by the municipality in the 1940s, the beginning of and improvements in the present era was just commencing. Municipalities encouraged such development and the requirements imposed on developers were much less restrictive than they are now. Legislative authority to municipal governments in order to fashion more protection for the public as to zoning as well as to utilities such as water and sewerage came later. *Cf. Divan Builders v. Wayne Tp. Planning Bd.,* 66 *N. J.* 582 (1975).

Finally, we turn to the judgment itself. We concur in its entirety except as to:

2) If no acceptable plan shall have been presented to and approved by this court by February 1, 1978, the Township of Jefferson will be required to take over, operate and rehabilitate the East Shores water system pursuant to the applicable statutory provisions.

We are unable to detect any sound reason for this directive at this time. There may be numerous other plans superior to the one suggested by this paragraph of the order. At oral argument several were mentioned, including the purchase of water from other sources. In the event of the township's failure to submit an acceptable plan by a time to be fixed by the trial judge, we direct that a hearing be afforded to the parties for the purpose of the court's selection of an appropriate plan to be followed by defendant township. In such selection the court will consider costs, serviceability and all other factors which should be considered in such determination. Whether or not the acquisition of the East Shores water system is the most feasible can then be decided.

Except as modified, the judgment entered in the trial court is affirmed. The cause is remanded to that court for the purpose of further proceedings not inconsistent with this opinion. We do not retain jurisdiction.