708 A.2d 690

HUDSON COUNTY CHAMBER OF COMMERCE, HUDSON COUNTY DISTRICT COUNCIL OF LABORERS PENSION FUND, SQUARE PLUS OPERATING CORP., CUNNINGHAM GRAPHICS, INC., AND MARGULIES, WIND, HERRINGTON & KNOPF, A PROFESSIONAL CORPORATION, PLAINTIFFS–RESPONDENTS, v. CITY OF JERSEY CITY, DEFENDANT–APPELLANT.

Argued February 2, 1998—Decided April 9, 1998.

*Dennis J. Drasco*, argued the cause for appellant (*Lum, Danzis, Drasco, Positan & Kleinberg*, attorneys; *Mr. Drasco* and *Colin M. Danzis*, of counsel and on the briefs).

*Robert E. Margulies*, argued the cause for respondents (*Margulies, Wind, Herrington & Knopf*, attorneys; *Jack Jay Wind*, on the briefs).

*William John Kearns, Jr.*, argued the cause for *amici curiae* New Jersey State League of Municipalities and New Jersey Institute of Municipal Attorneys (*Kearns, Vassallo, Guest & Kearns*, attorneys).

PER CURIAM.

We affirm the judgment of the Appellate Division substantially for the reasons set forth in that court's opinion. 310 *N.J.Super.* 208, 708 *A.*2d 699 (1997). However, we conclude that prejudgment interest should not have been awarded. Because Jersey City is a governmental entity and interest is not provided for by statute, "particular circumspection" in the granting of prejudgment interest is required, and "a showing of overriding and compelling equitable reasons" is essential to justify the award. *Board of Educ. v. Levitt*, 197 *N.J.Super.* 239, 244, 484 *A.*2d 723 (App.Div. 1984). In our view, no aspect of Jersey City's conduct in imposing and collecting the payroll taxes at issue warrants the imposition of prejudgment interest.

GARIBALDI, J., dissenting in part, concurring in part.

This appeal involves the validity of a payroll tax ordinance adopted by the City of Jersey City ("City") on December 6, 1995. More specifically, this case questions whether, under the referendum provisions of the Faulkner Act, *N.J.S.A.* 40:69A–184 to –196, a filed but insufficient referendum petition, which was never cured and ultimately withdrawn, delayed the effective date of that ordinance.

The majority affirms the Appellate Division and finds that the ordinance did not take effect until January 1996, after its statutory authorization had expired. *See N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996). Therefore, the majority holds the ordinance to be void and unenforceable. I believe that the insufficient petition suspended the collection of the tax, but did not change the effective date of the ordinance. As a result, I find that the ordinance took effect in December 1995, prior to the expiration of its statutory authority, and thus, the ordinance should be upheld.

## I.

The facts are undisputed. On December 6, 1995, the Municipal Council of the City adopted Jersey City Ordinance 95–117 ("Ordinance"). That Ordinance, known as the "Jersey City Payroll Tax of 1995" and titled the "Ordinance Supplementing Chapter 29 (Special Tax) of Jersey City Code," imposed a 1% tax on the payroll of every employer in the City. *Ordinance, supra,* § 29–1. The Ordinance was enacted pursuant to enabling legislation set forth in *N.J.S.A.* 40:48C–14 to –19.

Specifically, *N.J.S.A.* 40:48C–15 provided that any municipality may by ordinance "impose and collect an employer payroll tax for general municipal purposes of the municipality at a rate of 1% of the employer's payroll." The enabling legislation also contained a sunset provision, which prohibited the City from collecting that tax for services performed on or after January 1, 1996. *N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996). The

Ordinance was approved by the Mayor the next day, on December 7, 1995.

On December 26, 1995, a Committee of Petitioners, pursuant to *N.J.S.A.* 40:69A–185 of the Faulkner Act, submitted to the Jersey City Clerk ("Clerk") 525 referendum petitions protesting the Ordinance. To invoke the power of referendum, the Faulkner Act provides that a petition must be signed by "a number of the legal voters of the municipality equal in number to at least 15% of the total votes cast in the municipality at the last election at which members of the General Assembly were elected" and must be filed with the municipal clerk within twenty days of the final passage and approval of the ordinance. *N.J.S.A.* 40:69A–185. The Act then requires the municipal clerk to determine, within twenty more days, whether the petition is signed by a sufficient number of qualified voters and to certify the results of his or her examination to the municipal council at its next regular meeting. *N.J.S.A.* 40:60A–187. Pursuant to that statute, on January 16, 1996, the Clerk certified that the petitions protesting the Ordinance were insufficient and he notified the Committee of the same. The Committee was short by 869 valid signatures.

*N.J.S.A.* 40:69A–188 provides that an insufficient referendum petition may be amended by filing a supplementary petition within ten days after a notification of insufficiency has been served. Rather than amending the insufficient petition in this case, however, the Committee filed a letter with the Clerk withdrawing the petition. That letter, dated January 26, 1996, stated:

> The undersigned Committee of the Petitioners, pursuant to *N.J.S.A.* 40:69A–191 do hereby withdraw the Petitions previously submitted requesting a Referendum on City Ordinance 95–117 known as the Jersey City Payroll Tax of 1995.

Peter Murphy, a member of the Committee of Petitioners, asserted that the petition was withdrawn because of the large costs that an election would impose on the City and on the supporters of the referendum petition. Murphy also stated that the Committee withdrew the petition because of its belief that the referendum "was moot at that point due to the expiration of the enabling legislation and failure of the state legislature to extend same."

Concluding that the Ordinance could be enforced because the Committee had withdrawn its petition, the Chief Financial Officer of the City sent to all affected employers a 1995 tax return and payroll tax booklet to be used with regard to the payment of the payroll tax for the fourth quarter of 1995. The letter accompanying the booklet and return, dated March 1, 1996, stated that the employers' payroll tax payment was due on or before April 1, 1996. The City also made available to employers an application to extend the time to file a return. The City then began to collect the tax for the last quarter of the 1995 fiscal year.

On March 25, 1996, plaintiffs, employers in Jersey City, filed a verified complaint in lieu of prerogative writs in the Superior Court, Law Division seeking an order that the Ordinance was invalid. Plaintiffs successfully moved for summary judgment declaring that the Ordinance did not take effect until after January 26, 1996, the date the petition was withdrawn, and was accordingly unenforceable under the sunset provision. *See N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996).

The City appealed, and the Appellate Division affirmed the trial court's ruling that the Ordinance was invalid and unenforceable. We granted the City's petition for certification, 151 *N.J.* 75, 697 *A.*2d 547 (1997). The majority affirms the Appellate Division judgment for the reasons expressed in the opinion of the Appellate Division, reported at 310 *N.J.Super.* 208, 708 *A.*2d 699 (1997). I respectfully dissent.

II.

That the sunset provision in *N.J.S.A.* 40:48C–19 prohibited Jersey City from imposing a payroll tax on any services performed after January 1, 1996 is undisputed. *N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996). That provision was subsequently amended on June 17, 1996, one month after the trial court's decision and order, to extend the sunset provision to December 31, 1999. *L.* 1996, *c.* 33, § 1. However, that that amendment does not apply is also undisputed. The amendment

excludes those municipalities that have not "within two years prior to July 1, 1995 collected taxes or enacted an ordinance imposing a tax," which Jersey City has not done. *N.J.S.A.* 40:48C–19.

Therefore, Jersey City could succeed in imposing the payroll tax only if the Ordinance applied to services performed in the fourth quarter of 1995. Specifically, the Ordinance provides that it applies to:

> [A]ll payrolls related to services performed on or after the first day of the first month of the calender quarter in which this ordinance takes effect; provided, however, that no tax shall be imposed with respect to services performed in any calendar quarter prior to that in which this Article was adopted.
>
> [*Ordinance, supra*, § 29–3]

Because the Ordinance states that the tax shall be imposed on all services completed in the quarter in which the Ordinance "takes effect," whether Jersey City succeeded in imposing that tax depends on the effective date of the Ordinance. If the Ordinance became effective in December 1995, then the tax will survive under the sunset provision because it will apply to all services performed in the last quarter of the year, the quarter in which the Ordinance took effect. *See N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996).

### III.

Unlike the Appellate Division and the majority, I believe that the Ordinance took effect in December 1995 and, therefore, was valid under the sunset provision. *See N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996). As a result, the Ordinance should be upheld and the City should be allowed to collect a payroll tax for the last quarter of 1995.

### A.

Absent the referendum petitions and the application of the Faulkner Act, the effective date of the Ordinance is clear. The Ordinance itself provides that it "shall take effect at the time and in the manner as provided by law." *Ordinance, supra*, § 29–8(d). *N.J.S.A.* 40:69A–185 provides that no ordinance "shall take effect

before twenty days from the time of its final passage and its approval by the mayor where such approval is required." *See also* *N.J.S.A.* 40:69A–181(b) ("No ordinance other than the local budget ordinance shall take effect less than twenty days after its final passage by council and approval by the mayor where such approval is required, unless the council shall adopt a resolution declaring an emergency and at least two-thirds of all the members of the council vote in favor of such a resolution"). In this case, the Ordinance was passed by the council on December 6, 1995, and was approved by the mayor on December 7, 1995. Therefore, the Ordinance officially took effect on December 27, 1995, twenty days after that approval and passage.

## B.

The disagreement in this case involves the application of the Faulkner Act ("Act"). That Act provides that, if a referendum petition is filed pursuant to the requirements of the Act, the voters "shall have the power of referendum which is the power to approve or reject at the polls any ordinance submitted by the council to the voters or any ordinance passed by the council." *N.J.S.A.* 40:69A–185. The Act also provides specific time frames within which to complete the various steps of the referendum process. To protest an ordinance under the Faulkner Act, a petition signed by the requisite number of voters must be submitted to the municipal clerk within the twenty-day period between the ordinance's final passage and approval and its original effective date. *N.J.S.A.* 40:69A–185. Within twenty days of the filing of such a petition, the municipal clerk must then determine whether the petition is signed by a sufficient number of qualified voters. *N.J.S.A.* 40:69A–187. If a notification of insufficiency is issued, the Act states that the parties shall be given an additional ten days in which to file an amended supplementary petition. *N.J.S.A.* 40:69A–188. Finally, the Act provides another five days after the filing of such an amendment for the clerk to again

examine the petition and determine whether a sufficient number of voters have signed it. *N.J.S.A.* 40:69A-188.

The Appellate Division and the majority argue that the filing of the referendum petition in this case on December 26, 1995, one day before the twenty-day period concluded, prevented the Ordinance from taking effect until January 1996. They maintain that the referendum provisions of the Faulkner Act mandate that the effective date of an ordinance be postponed until the referendum process is terminated, regardless of whether that termination occurs by submission of the ordinance to the voters or by an earlier withdrawal of or failure to amend a petition. *N.J.S.A.* 40:69A-185, -187, -188. I disagree with that conclusion.

I believe that, until the referendum process is completed and an ordinance is passed by the voters, the referendum provisions of the Faulkner Act do not change the effective date of an ordinance. Rather, the time frames stated in the Act serve only to suspend municipal action or activity under that ordinance. Therefore, if a petition is deemed insufficient and no further action is taken, or if a petition is withdrawn at any time before the conclusion of the referendum process, the effective date of the protested ordinance, having been temporarily suspended, will be retroactively valid to its original effective date, twenty days from final approval and passage.

## C.

The language of the statute supports my conclusion that the referendum process merely suspends the effective date of an ordinance. One of the central principles of statutory construction requires a court to examine the plain meaning of a statute, reading the words and phrases of that statute according to their ordinary or general meaning. *State v. Hoffman,* 149 *N.J.* 564, 578, 580, 695 *A.*2d 236 (1997); *In re Schuman,* 114 *N.J.* 14, 25, 552 *A.*2d 602 (1989). If the Legislature had intended to delay the effective date of an ordinance beyond the twenty-day period, it could have stated that an ordinance *will not* or *shall not* take effect until the

proceedings are completed. It did not. None of the Faulkner Act provisions explicitly state that the effective date of an ordinance shall be changed. Nor do the sections outlining the time frames in which the elements of the referendum process are to be completed make any reference to the operative date of an ordinance at all. Instead, the statutory language merely defers the imposition of an ordinance until the conclusion of the referendum proceedings.

Specifically, *N.J.S.A.* 40:69A–185 provides:

> If within twenty days after such final passage and approval of such ordinance a petition protesting against the passage of such ordinance shall be filed with the municipal clerk *and* if the petition shall be signed by [the required] number of the legal voters of the municipality . . ., the ordinance shall be *suspended from taking effect* until proceedings are had as herein provided.
>
> (emphasis added).

Under its ordinary meaning, to "take effect" means to "become operative" or to "go into operation." *Black's Law Dictionary* 1304 (5th ed.1979). "Suspend" is defined as "[t]o interrupt; to cause to cease for a time; to postpone; to stay, delay, or hinder; to discontinue temporarily, but with an expectation or purpose of resumption." *Black's, supra,* at 1297. Therefore, the language of *N.J.S.A.* 40:69A–185 simply means that a municipality cannot take action to enforce an ordinance until the municipal referendum proceedings are concluded. It does not mean that, before the process is finished, the effective date of an ordinance can be displaced.

*N.J.S.A.* 40:69A–189, which refers to the filing of an insufficient petition as well as the withdrawal of a sufficient petition before the completion of the process, also uses the word "suspend." That section states:

> Upon the filing of a referendum petition with the municipal clerk, the ordinance shall be *suspended* until ten days following a finding by the municipal clerk that the petition is insufficient or, if an amended petition be filed, until five days thereafter; or, if the petition or amended petition be found to be sufficient, until it be withdrawn by the Committee of the Petitioners or until repeal of the ordinance by vote of the council or approval or disapproval of the ordinance by the voters.
>
> [*N.J.S.A.* 40:69A–189 (emphasis added).]

The use of the word "suspend" in the Faulkner Act serves to prevent the enforcement of an ordinance, but does not render invalid its legal operation date before the referendum process has been completed. Therefore, under *N.J.S.A.* 40:69A-189, if the referendum process is not taken to its final conclusion or if the procedure is terminated at any point before passage of an ordinance by the voters, the municipality will be able to enforce the ordinance as of its original effective date. The effective date of an ordinance should be moved only if the voters decide to pass that ordinance at a referendum election; otherwise, it should not be shifted or changed.

Finally, the language of the Faulkner Act outlines the possible outcomes that can result from a petitioner's actions. If an amended petition is insufficient after the clerk's second review, the clerk shall notify the Committee of Petitioners and *"no further action shall be had* on such insufficient petition." *N.J.S.A.* 40:69A-188 (emphasis added). Furthermore, if a sufficient petition is withdrawn before submission of an ordinance to the voters, that petition shall "cease to have any force or effect." *N.J.S.A.* 40:69A-191. That latter provision explicitly states:

> If within 20 days of the submission of a certified petition by the municipal clerk the council shall fail to ... repeal an ordinance as requested by a referendum petition, the municipal clerk shall submit the ordinance to the voters unless, within 10 days after final adverse action by the council or after the expiration of the time allowed for such action, ... a paper signed by at least four of five members of the Committee of Petitioners shall be filed with the municipal clerk requesting that the petition be withdrawn. *Upon the filing of such a request, the original petition shall cease to have any force or effect.*
>
> [*N.J.S.A.* 40:69A-191 (emphasis added).]

Therefore, if an insufficient and unamended petition is withdrawn before that final step, it follows that such a petition will be void *ab initio* and will relate back to the original effective date of the ordinance.

### D.

My finding that the Faulkner Act merely suspends activity under an ordinance until the referendum process is completed also

comports with that statute's legislative intent. Principles of statutory construction dictate that statutes are to be read "sensibly rather than literally, with the purpose and reason for the legislation controlling." *Reisman v. Great Am. Recreation, Inc.*, 266 *N.J.Super.* 87, 96, 628 *A.*2d 801 (App.Div.1993), *certif. denied,* 134 *N.J.* 560, 636 *A.*2d 519 (1993). "The primary task for the Court is to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" *Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992) (citation omitted). Most importantly, statutes should not be construed so as to lead to unreasonable, anomalous, or absurd results. *Reisman, supra,* 266 *N.J.Super.* at 96, 628 *A.*2d 801.

The purpose of the Faulkner Act was to provide New Jersey's municipalities with various optional methods of organizing their local governments. *Keuerleber v. Township of Pemberton,* 260 *N.J.Super.* 541, 544, 617 *A.*2d 277 (App.Div.1992), *certif. denied,* 133 *N.J.* 434, 627 *A.*2d 1140 (1993). Because the Act intended to confer upon municipalities "the greatest possible powers of local self-government and home rule consistent with the Constitution of this State," *ibid.,* the referendum process is one of the cornerstones of that Act. Meant to "encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters," the referendum process gives voters in Faulkner Act communities a veto power over municipal ordinances. *Narciso v. Worrick,* 176 *N.J.Super.* 315, 319, 423 *A.*2d 308 (App.Div.1980); *see also Township of Sparta v. Spillane,* 125 *N.J.Super.* 519, 523, 312 *A.*2d 154 (App.Div.1973) (declaring referendum process to be one of "two useful instruments of plebiscite power"), *certif. denied,* 64 *N.J.* 493, 317 *A.*2d 706 (1974); *Maese v. Snowden,* 148 *N.J.Super.* 7, 11, 371 *A.*2d 802 (App.Div.1977) (Faulkner Act provides "direct means of controlling proposed or already enacted municipal legislation").

Before an ordinance will be put through that scrutiny, however, the petitioners must comply with the specific requirements of the Act. Only if the petitioners complete those requirements will they

be able to have the ordinance repealed by the council or, if the council fails to do so, have the right to vote on the ordinance themselves, *N.J.S.A.* 40:69A–191, and only if they pass the ordinance at a referendum election will its effective date be changed. As a result, the legislative intent of the Faulkner Act will be frustrated if those who do not comply with the full requirements of the Act, either by failing to amend an insufficient petition or withdrawing any petition, are also able to change the effective date of or to defeat a validly-passed municipal ordinance. Until the referendum process is completed, the Faulkner Act intends to suspend the enforcement, but not delay the effective date, of a municipal ordinance. To hold otherwise will lead to absurd and unreasonable results. *See Reisman, supra,* 266 *N.J.Super.* at 96, 628 *A.*2d 801.

Allowing an invalid or withdrawn petition to change the effective date of an ordinance might, in cases with expiring statutory authorization such as this one, have the same impact as if the voters acting under a validly required referendum had voted against the ordinance. The Faulkner Act did not intend for a validly enacted municipal ordinance to be rendered a nullity by the submission of an invalid petition. The majority's opinion would permit a petition with only one or a few signatures, submitted in bad faith and with no intention of completing the referendum process, to delay the effective date of an ordinance. Such a result, allowing a few people to manipulate for their own advantage a procedure that is supposed to benefit the majority, is not only unreasonable but also against the Legislature's intent. There is nothing to suggest the Legislature intended to give invalid and withdrawn petitions the same effect as if the referendum had been held and the voters had defeated the Ordinance.

Finally, although the Faulkner Act is supposed to be liberally construed to achieve its salutary purposes, "it was not intended to be an unlimited and unqualified right." *Cuprowski v. City of Jersey City,* 101 *N.J.Super.* 15, 27, 242 *A.*2d 873 (Law Div.), *aff'd,* 103 *N.J.Super.* 217, 247 *A.*2d 28 (App.Div.), *certif. denied,* 53 *N.J.* 80, 248 *A.*2d 433 (1968); *see also Narciso, supra,* 176 *N.J.Super.*

at 319, 423 *A.*2d 308 (finding that, although referendum provisions should be liberally construed, they "cannot be applied literally in all cases"). The right to seek a referendum under the Faulkner Act is a statutory but not a constitutional right, *Lawrence v. Schrof,* 162 *N.J.Super.* 375, 380, 392 *A.*2d 1243 (Law Div.1978); *Smith v. Township of Livingston,* 106 *N.J.Super.* 444, 453, 256 *A.*2d 85 (Ch.Div.), *aff'd,* 54 *N.J.* 525, 257 *A.*2d 698 (1969), and was never intended to prevent the enactment of ordinances for which a contrary legislative purpose may be discerned, *State v. East Shores, Inc.,* 164 *N.J.Super.* 530, 536, 397 *A.*2d 368 (App.Div.1979); *In re Certain Petitions for a Binding Referendum,* 154 *N.J.Super.* 482, 485, 381 *A.*2d 1217 (App.Div.1977). The right to referendum under the Faulkner Act does not encompass the right to change the effective date of an ordinance by filing an insufficient petition that is never amended and later withdrawn.

## E.

Despite the actions of the petitioners pursuant to the Faulkner Act, the effective date of the Ordinance remained December 27, 1995, twenty days after its final approval and passage. Because the petitioners withdrew their insufficient, unamended petition before the completion of the referendum process, they did not comply with the ultimate intentions of the Act. As a result, the efforts of the petitioners postponed the authority of the municipality to actually collect the payroll tax; however, once their petition was withdrawn, the municipality regained that authority, retroactive to the original effective date. Since the Ordinance officially took effect in December 1995, the Ordinance applied to all services performed in the last quarter of 1995 and was valid under the sunset provision. *See N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996). Therefore, the City should have been allowed to collect a payroll tax for the last quarter of that year.

## IV.

The Ordinance should also have been upheld under the principles of ordinance construction. Generally, municipal ordinances

carry a presumption of validity, with a heavy burden placed on the party seeking to overturn them. *Quick Chek Food Stores v. Township of Springfield,* 83 *N.J.* 438, 447, 416 *A.*2d 840 (1980); *Hutton Park Gardens v. Town Council of W. Orange,* 68 *N.J.* 543, 564, 350 *A.*2d 1 (1975). Even the New Jersey Constitution states that "any law concerning municipal corporations ... shall be liberally construed in their favor." *N.J. Const.,* art. IV, § 7, ¶ 11; *see also Whelan v. New Jersey Power & Light Co.,* 45 *N.J.* 237, 251, 212 *A.*2d 136 (1965) ("We are enjoined by the Constitution ... to interpret statutes liberally in favor of the existence of local power to deal with local needs."). Therefore, an ordinance may be overturned only if it is arbitrary and unreasonable and "only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest." *Hutton Park, supra,* 68 *N.J.* at 565, 350 *A.*2d 1; *Quick Chek, supra,* 83 *N.J.* at 447, 416 *A.*2d 840.

In construing a municipal ordinance, the same rules of guidance apply as in the interpretation of a statute. *L.P. Marron & Co. v. Township of Mahwah,* 39 *N.J.* 74, 80, 187 *A.*2d 593 (1963). A court must examine the language of the ordinance according to its ordinary and general meaning, and then must focus on the legislative purpose and intent. *Hoffman, supra,* 149 *N.J.* at 580, 695 *A.*2d 236; *L.P. Marron, supra,* 39 *N.J.* at 80, 187 *A.*2d 593; *AMN, Inc. v. Township of S. Brunswick Rent Leveling Bd.,* 93 *N.J.* 518, 525, 461 *A.*2d 1138 (1983). Furthermore, where the drafters of a statute or ordinance did not consider or even contemplate a specific situation, a court should interpret the enactment " 'consonant with the intent of the draftsman 'had he anticipated the situation at hand.' ' " *AMN, Inc., supra,* 93 *N.J.* at 525, 461 *A.*2d 1138; *Matlack v. Burlington County Bd. of Chosen Freeholders,* 194 *N.J.Super.* 359, 361, 476 *A.*2d 1262 (App.Div.), *certif. denied,* 99 *N.J.* 191, 491 *A.*2d 693 (1984). Finally, although ambiguous tax statutes are generally to be construed in favor of the taxpayer and against the State, that rule does not apply where the language and

legislative history of the provision are clear. *Fedders Fin. Corp. v. Director, Div. of Taxation*, 96 *N.J.* 376, 385, 476 *A.*2d 741 (1984); *see also Public Serv. Elec. & Gas Co. v. Township of Woodbridge*, 73 *N.J.* 474, 478, 375 *A.*2d 1165 (1977) (stating that in the area of construction of statutes, "particularly those having to do with taxation," our sole guidepost is legislative intent.).

Under those principles, the majority should have given deference to the Ordinance. By its plain language, the Ordinance permitted the collection of a tax for the last quarter of 1995 and the Court should have strained to uphold such a finding. Moreover, the municipal council must have intended to impose the tax on that last quarter, because to hold otherwise would lead to an absurd result. *See Reisman, supra*, 266 *N.J.Super.* at 96, 628 *A.*2d 801. There is no valid reason why the council would have wanted to pass an ordinance effective only in 1996 because, as a result of the sunset provision, that ordinance would never have been able to have been enforced. *See N.J.S.A.* 40:48C–19 (1994), *amended by N.J.S.A.* 40:48C–19 (1996). In addition, the municipality mailed to all employers a payroll tax booklet and instructions relating to the last quarter of 1995, thus indicating that that was the quarter for which it meant to impose the tax. Finally, even if the council failed to anticipate that the sunset provision would prevent the collection of a tax for the first quarter of 1996, its probable intent had the council contemplated the full situation would certainly have been to propose and enact a valid ordinance. *See AMN, Inc., supra*, 93 *N.J.* at 525, 461 *A.*2d 1138.

## V.

Because I would find that the City is entitled to collect the tax, I would find that the City does not have to make any reimbursements and, thus, no pre-judgment interest need be awarded. Therefore, I agree with the majority that pre-judgment interest should not be granted. When the judgment-debtor is a governmental agency and interest is not provided for by statute, "particular circumspection in the granting of pre-judgment interest is

required and a showing of overriding and compelling equitable reasons must be made in order to justify the award." *Board of Educ. v. Levitt,* 197 *N.J.Super.* 239, 244, 484 *A.*2d 723 (App.Div. 1984); *accord Division of Youth & Family Servs. v. County of Middlesex,* 188 *N.J.Super.* 1, 5, 455 *A.*2d 1119 (App.Div.1982). No such compelling reasons exist here.

I would reverse the judgment of the Appellate Division.

Chief Justice PORITZ and Justice COLEMAN join in this opinion.

*For modification & affirmance*—Justices HANDLER, POLLOCK, O'HERN and STEIN—4.

*Concur in part; dissent in part*—Chief Justice PORITZ, and Justices GARIBALDI and COLEMAN—3.