816 A.2d 1041

VAN NOTE–HARVEY ASSOCIATES, P.C., PLAINTIFF–
APPELLANT, v. THE TOWNSHIP OF EAST
HANOVER, DEFENDANT–RESPONDENT.

Argued January 6, 2003—Decided March 12, 2003.

*Michael A. Spero* argued the cause for appellant (*McCarthy and Schatzman,* attorneys).

*Christopher E. Martin* argued the cause for respondent (*Weiner Lesniak* and *Ohrenstein & Brown,* attorneys; *Mr. Martin* and *Margaret A. Miller,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This case is essentially a suit on a book account in which plaintiff seeks to recover contractual prejudgment interest on "accumulating accounts receivables." Although the complaint

sought such prejudgment interest, that issue was not submitted to the jury. The trial court indicated that it would decide that issue after the jury rendered its verdict. Judgment entered pursuant to the jury's verdict provided that the "interest ... be calculated and entered by way of post judgment motion." At the conclusion of a hearing on that motion, the court denied the requested prejudgment interest. The Appellate Division affirmed in an unpublished opinion. We now reverse and remand for a determination of prejudgment interest under the contract.

## I.

In October 1972, defendant Township of East Hanover contracted with plaintiff to provide professional engineering services in connection with a multi-million dollar sanitary sewer construction project. Plaintiff designed the system and supervised its installation. Plaintiff submitted the design specifications to the United States Environmental Protection Agency (EPA) and the New Jersey Department of Environmental Protection (DEP) in an effort to secure federal and state grant funding. The EPA awarded a grant to the Township of approximately $12 million and the DEP awarded a grant of $1,242,649.

A unit price contract for installation of the sewer system was awarded to J.A. Cavanaugh Contractors, Inc. (JAC) in August 1982. Under the terms of that contract, monthly estimates were to be submitted to the Township as the work progressed. The contract provided, among other things, that JAC would be paid for materials used in the project based on a fixed unit price. Any extras would be adjusted upon completion of the installation. The construction phase of the project began in September 1982 and was completed in 1985. During the construction, metal sheeting was installed along the sidewalls of sewer pipe trenches to prevent collapse of the trenches before backfilling occurred. Based on the design specifications, it became obvious during the construction process that JAC was using excessive sheeting. Upon completion of the project, JAC sought payment for additional sheeting and

other cost overruns in excess of $1 million, approximately $287,000 of which was for additional sheeting.

JAC's claims for cost overruns were submitted to arbitration and the Township settled for $940,000. Thereafter, plaintiff submitted to the Township a bill of $110,000 for professional services rendered during the arbitration proceedings and a separate bill of $167,658.26 for services rendered during the sewer construction project. When the Township disputed the bills submitted by plaintiff, the present litigation was instituted.

In the complaint, plaintiff sought to recover a $183,998.15 balance due and owing for providing professional engineering services during the arbitration proceedings, $38,954.45 for services rendered with respect to grant applications to fund the project, $13,218.78 for "sewer review work and related litigation" work, $20,648.63 for "interest on retainage held by the defendant," and contractual prejudgment interest of $42,127.27 "on the accumulating accounts receivables" as of September 30, 1992, when the complaint was drafted.

Both the claims for interest on the retainage held by the Township and prejudgment interest on the accumulating accounts receivable were based on the contract between plaintiff and the Township. Article III, referred to by the parties as "Step 3 Agreement," provides that plaintiff "may submit monthly or periodic statements requesting payment ... based upon the amount and value of the services provided and expenses incurred." The contract contains certain billing practices and preconditions to payment. It also contemplates a five percent retainage on progress payments to plaintiff to be held by the Township and "placed in an interest bearing escrow account ... and the interest earned thereon shall belong to the [plaintiff] Engineer."

Article III contains separate language dealing with pre-judgment interest. Because the claim of entitlement to such interest is the sole issue before us, the contractual provision is set forth in detail. It provides:

*The TOWNSHIP agrees to process the ENGINEER's monthly progress payment requests as soon as practicable.* In those situations where the ENGINEER submits a monthly payment request at least seven (7) days before the TOWNSHIP's regularly scheduled meeting, the TOWNSHIP will attempt to issue a check in payment of the approved portion of the ENGINEER's invoice, less any retainage withheld, on the following workday. *However, should the TOWNSHIP fail to issue a check in payment to the ENGINEER within seven (7) days after approval of such payment at the regularly scheduled TOWNSHIP meeting, the ENGINEER shall be entitled to interest on the approved portion of the invoice computed at the prime interest rate from the date until the date of payment.* It is specifically agreed that the TOWNSHIP is not obliged to approve for payment under this processing procedure any expenses or costs submitted by the ENGINEER for which the TOWNSHIP is not reasonably satisfied with the supporting documentation. The supporting documentation to be submitted by the ENGINEER with said progress payments shall include running totals of services rendered to date, and requisition payments submitted with breakdowns as to the pre-construction, construction and post-construction phases of the engineering and administration services referred to herein; as well as running totals measured against actual work performed during the construction phase of the project by the contractors performing such services. In the event the TOWNSHIP is not reasonably satisfied with such supporting documentation or does, in fact have legitimate questions concerning the progress payment submittal; the ENGINEER shall be notified of any such questions, or the need of additional information or documentation, prior to noon on the Wednesday following submission of the invoice under this procedure, being the Wednesday prior to the TOWNSHIP'S regularly scheduled Thursday meeting, so as to provide some time to ENGINEER with the aforesaid notice, then the costs in question shall be subtracted from the total amount of the ENGINEER's invoice and the approved costs processed in accordance with the payment schedule. [ (Emphasis added).]

The Township answered the complaint and asserted a counterclaim alleging that plaintiff, among other things, had engaged in professional negligence when providing pre-construction and construction engineering services that contributed to the cost overruns, including the extra sheeting. The Township demanded a trial by jury on all issues. The trial court instructed the jury that plaintiff was seeking to recover five types of contract damages: 1) $183,998 related to the arbitration; 2) $56,709 related to grant applications; 3) $13,000 related to sewer reviews; 4) $211 for litigation aid; and 5) $39,960 for interest on retainage. Significantly, and without objection by counsel for plaintiff, the jury was not instructed with respect to contractual pre-judgment interest. The jury verdict sheet listed the above five items without stating the amount sought for each. When various exhibits were being

checked before permitting them to be taken into the jury room, the trial judge stated: "I will fix the interest charges, depending on the verdict, so you don't have to leave that in there, perhaps."

During the jury's deliberations, it submitted the following question to the court: "Can we increase/decrease damage award, dollar amounts?" Counsel for the Township suggested that the court inform the jury that the issue of "interest was in the domain of the court." The court's response to the jury's question is contained in the following colloquy:

THE COURT: Well, of course, as I said to you in my charge, you have the authority to render the damages. But this case involves a specific claim for liquidating damages. That is that they asked for specific amounts. You can't increase those. You may decrease them, if you feel that the evidence that you heard warrants such a decrease. So it's not an all or nothing. But because it's capped at what they've asked for, and there is no other proofs that would give—make them. Does that answer your question?

A JUROR: Not really.

THE COURT: Not really. All right.

A JUROR: Well—

THE COURT: You can remain seated.

A JUROR: Does that include court costs as well or—

THE COURT: Don't worry about—don't worry about court costs. Don't worry about interest charges.

A JUROR: Okay. That's—

A JUROR: That's really what our question is about.

THE COURT: The rules on interest are controlled by post-application motions and things like that. I'll take care of it.

A JUROR: That was our question.

THE COURT: Why didn't you ask about interest? You're masking your discussions by such a clever question. Shows you what a good jury you are. You're all—there are rules, but you don't have to worry about them, that deal with interest that runs from certain things, prejudgment interest, interest that may be within the contents of obligations. But that can all be taken care of procedural[ly] by myself. Thank you very much.

The jury, using the verdict sheet, returned a verdict for plaintiff in the sum of $293,886.71, the same amount outlined in the court's charge. The jury rejected the counterclaim for professional negligence. In a post-judgment application, the trial court rejected plaintiff's application for prejudgment interest "because ... plain-

tiff has not shown overriding and compelling equitable reason to justify such an award." That reasoning was based on the court's belief that the Township had not prosecuted a frivolous counterclaim. The Appellate Division affirmed, deferring to the trial court's "finding that prejudgment interest was not warranted under the contract or under the equities of the case."

We granted plaintiff's petition for certification, 172 *N.J.* 358, 798 *A.*2d 1271 (2002), and now reverse.

## II.

The sole issue presented is whether plaintiff was entitled to contractual prejudgment interest on accumulating overdue accounts receivable. A demand for such interest clearly was made in the complaint. Although the complaint did not demand a jury trial, the Township's answer demanded a jury trial on all issues. *See R.* 4:35–1. Although the transcribed record made available to us contains no formal waiver of trial by jury on the contractual prejudgment interest claim, the trial court's failure to submit that issue to the jury without objection and the court's assertion several times during the trial that that issue would be decided by the court in a post-judgment motion, persuade us to conclude that the parties' conduct constitutes a waiver of the previous demand for a jury trial on prejudgment interest on accumulating overdue accounts receivable. Also, *Rule* 4:35–1(d) permits the parties to agree to have the judge, rather than the jury, try certain issues. That is what occurred in this case.

Despite the fact that the claim of prejudgment interest on the accumulating overdue accounts receivable was to be decided by the judge rather than the jury, the trial court's decision does not reflect that it decided plaintiff's claim of entitlement to contractual prejudgment interest. When the trial judge stated that he was denying "plaintiff's application for prejudgment interest because I believe that the plaintiff has not shown overriding and compelling equitable reason to justify such an award," the judge was referring to the standard for awarding prejudgment interest in contract

or contract-like actions against a governmental agency when there is no statute authorizing such interest. *See Hudson County v. Jersey City,* 153 *N.J.* 254, 254, 708 *A.2d* 690 (1998); *Bak–A–Lum Corp. v. Alcoa Building Prods.,* 69 *N.J.* 123, 131, 351 *A.2d* 349 (1976); *Board of Educ. of the City of Newark v. Levitt,* 197 *N.J.Super.* 239, 244, 484 *A.2d* 723 (App.Div.1984). What the trial court and the Appellate Division failed to address is plaintiff's claim that the Township as a public entity, like a private enterprise, has obligated itself contractually to pay prejudgment interest. *See North Bergen Rex Transport, Inc. v. Trailer Leasing Co.,* 158 *N.J.* 561, 570, 574–76, 730 *A.2d* 843 (1999). The claim here is based on the contractual provisions previously expressed. In the face of those contractual provisions, the Township, as any private entity, must be required to comply with its contractual obligations.

### III.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division to determine whether plaintiff is entitled to prejudgment interest on the accumulating overdue accounts receivable pursuant to the "Step 3 Agreement." The remand proceedings are to be conducted without a jury. To the extent that the jury's verdict decided any precondition to awarding prejudgment interest, that determination must be accorded *res judicata* effect under the circumstances of this case.

*For reversal and remandment*—Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—6.

*Opposed*—None.