L. P. MARRON & COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF MAHWAH, DEFENDANT-APPELLANT.

Argued November 7, 1962—Decided January 21, 1963.

Mr. *John Frank, Jr.* argued the cause for defendant-appellant (*Mr. John Warhol, Jr.,* attorney).

Mr. *Murray A. Laiks* argued the cause for plaintiff-respondent (*Messrs. Heller & Laiks,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. Plaintiff owns a six and one-half acre tract of land in the Township of Mahwah. The contour of the parcel is triangular. Its two legs extend, respectively, 734 feet along West Ramapo Avenue and 807 feet along Route 17. Its base extends 734 feet along lands presently or for-

merly owned by one Helwig. The frontage along Route 17 is zoned for business to a depth of 200 feet. The balance of the lands are zoned for AA residential use. At an undisclosed time in the past, plaintiff excavated the business section of its property adjoining Route 17, reducing its elevation to the grade of that highway. Upon this strip it constructed two service stations. The lowering of the elevation of this strip left a plateau upon the reduced triangle approximately 20 feet higher than Route 17 and Ramapo Avenue, with a gradual slope upward to the Helwig lands.

On or about July 2, 1959, plaintiff advised defendant that it intended to erect three residences on the portion of the tract zoned for that use, and that the existing topography made the lands undesirable for such a purpose. It stated that in order to remedy this condition it intended to remove the soil from the entire plateau to reduce the elevation to the grade of Ramapo Avenue. Plaintiff requested confirmation that no special permit would be required for such soil excavation and removal. It was informed that its intended project fell within the prohibitory confines of municipal ordinance 149 of 1953 which provides:

"Section 1. No person shall excavate or otherwise remove soil for sale or for use other than on the premises from which the soil shall be taken, except in connection with the construction or alteration of a building on such premises, and excavation or grading incidental thereto, without first having procured permission therefor from the Township committee of the Township of Mahwah."

Under protest, plaintiff filed an application for a permit in accordance with the requirements of section 2 of the ordinance. After a public hearing participated in by neighborhood property owners, the Township Committee denied plaintiff's application, resting its decision upon the following findings of fact:

"Whereas the L. P. Marron Company has made application for said removal under ordinance number 149 as amended, and whereas a hearing on said application was had even date herewith now therefore

be it resolved by the Township Committee of the Township of Mahwah that the said application be denied it being determined as a fact that contour lines and grades on map accompanying said application would cause a drainage condition that would flood septic disposal systems and houses if any located below slopes and would adversely affect land values in the area of the proposed dirt removal and would adversely affect the co-ordinated adjusted and harmonious physical development of the Township."

Plaintiff thereupon instituted an action in lieu of prerogative writs seeking an enforcement of its alleged rights to excavate and remove the soil, asserting: (1) The contemplated excavation and removal was to be accomplished "in connection with the construction * * * of a building" on the premises, and therefore under the terms of the ordinance no permit was required, and (2) even if a permit was required, plaintiff proved that the proposed project complied with the norms and standards set forth in the ordinance precedent to issuance thereof and accordingly, defendant erred in its refusal.

The matter was submitted to the Law Division upon the stenographic record of the municipal hearing. The trial court found in favor of the defendant. Plaintiff appealed to the Appellate Division, which reversed that judgment in an unpublished opinion, holding that plaintiff was exempt from the ordinance. This court granted defendant's petition for certification. 38 *N. J.* 179 (1962).

Although the transcript of the municipal hearing is somewhat abstruse, the following additional facts can be garnered therefrom:

Plaintiff acquired the subject property in 1955. At that time, a residence and a carriage barn which contained an apartment were situate thereon, facing Ramapo Avenue. Plaintiff admitted that the residence, although not of recent construction, was habitable and "a valuable piece of property." The house was situated approximately 300 feet from Route 17, 75 feet from Ramapo Avenue, and 250 feet from the Helwig line. A curved driveway, extending approximately 250 feet in each direction from the house, gave

access to Ramapo Avenue. The surrounding lands were wooded. In December 1955, plaintiff was granted a variance from the terms of the zoning ordinance by the Board of Adjustment, which variance would have permitted the construction of a motel upon a 200-foot wide strip of land adjacent to the business zone. It proceeded to demolish the existent buildings and thereafter felled many of the larger trees on the tract. Objectors to the variance initiated an action in lieu of prerogative writs. As a result the Law Division set the variance aside. Plaintiff did not appeal.

Plaintiff subsequently obtained municipal approval for the subdivision of the residentially zoned lands into three lots. It made application to the building inspector for a permit to erect one house, which was denied for failure to supply a percolation test. Plaintiff's excuse for this omission was the impracticability of completing such a test when it anticipated removing the present soil to a depth of 20 feet.

Plaintiff indicated its intention to reduce the elevation of the land approximately to the grade of the two converging highways. To accomplish this it proposes to excavate and remove some 36,000 cubic yards of soil in the first year and to continue with such undertaking until a total of 76,000 cubic yards is excavated and removed. It intends to use 20,000 cubic yards thereof as fill for lands which it owns directly across Route 17 from this property in order to raise the grade thereof to that of the highway. The balance will be available for sale.

Although plaintiff does not assert that the lands in their natural state are unuseable for residential purposes, and that the proposed excavation is therefore essential, it does urge that "[i]n order to properly use the three lots in accordance with the existing zoning ordinance (for residential purposes), it was necessary to bring down the grade of the terrain to overcome the difficulty of ingress and egress to the homes to be erected thereon." A large portion of its proof at the municipal hearing consisted of an attempt to establish that the three dwellings which it proposed to erect would be of greater

value, (1) if the slope at the boundary line at the business zone were eliminated, and (2) if the elevation of the lands were reduced to permit access driveways to each of the proposed houses on a grade more nearly equal to that of Ramapo Avenue.

By direct proof and cross-examination by objecting neighboring property owners it was demonstrated that plaintiff itself created the sloping condition which exists at the business property line, one source of its present complaint. If this plateau were eliminated in the manner proposed by plaintiff, the "cliff" which now exists at the business line would in effect be transferred to the westerly property line and create a similar unfavorable condition for the Helwig property. Should the Helwig slope thus created remain in the condition in which plaintiff allowed the slope toward the business zone to remain, erosion would be inevitable. Although plaintiff's construction of access driveways would be facilitated by reducing the elevation of the lands, the grade of the presently existing driveway is reasonably gradual and it could be utilized for the three proposed residences. Additionally, plaintiff could build individual serpentine driveways with sloping sides at a reasonable grade, without any unsightly consequences.

Plaintiff's basic position is that no permit is required for excavation and soil removal, regardless of the magnitude thereof, when done in connection with the construction of any building, irrespective of whether such excavation and removal are necessarily required for excavation and grading incidental to such construction.

Defendant argues that the ordinance should be construed to except from its provisions only such excavation and soil removal as are incidental to the ordinary excavation and grading necessitated by the construction of a building and that the removal which plaintiff proposes does not fall within either of those categories.

Thus, we are confronted, first, with the primary problem of whether the ordinance limits soil removal without a permit

to those circumstances under which such removal is incidental to excavation and grading necessary to the construction of a building, and in the event the answer to this query is in the affirmative, whether what plaintiff intends to do falls within that category.

In seeking to construe an ordinance, the same rules of guidance are employed as in the construction of the terms of a statute. *Guill v. Mayor and Council of City of Hoboken,* 21 *N. J.* 574, 587 (1956); *Sutherland, Statutory Construction* § 3905 (*3d ed.* 1943).

To determine the meaning of an ordinance it is essential to ascertain the purpose for which it was enacted. *Glick v. Trustees of Free Public Library,* 2 *N. J.* 579, 585 (1949). Its meaning can be determined by the reason and spirit of the enactment. As stated in *Sperry and Hutchinson Co. v. Margetts,* 15 *N. J.* 203 (1954), at *p.* 209:

> "The intention of the lawgiver is taken or presumed according to what is consonant to reason and good discretion. The particular words are to be made responsive to the reason and spirit of the enactment. *Wright v. Vogt,* 7 *N. J.* 1 (1951). The purpose of construction is to bring the operation of the statute within the apparent intention of the Legislature. *Nagy v. Ford Motor Co.,* 6 *N. J.* 341 (1951). When the general intent is found, general words may be restrained accordingly, and those of narrower significance expanded to effectuate that intent. *Glick v. Trustees of Free Public Library,* 2 *N. J.* 579 (1949). The true meaning of any clause or provision ordinarily is that which best comports with the subject and general object of the act. *Maritime Petroleum Corporation v. City of Jersey City,* 1 *N. J.* 287 (1949)."

Thus, the entire ordinance must be viewed with an attempt to harmonize its integral parts.

The purpose for the enactment of the ordinance is stated in its preamble wherein the mischief to be remedied is detailed:

> "WHEREAS, the Township Committee of the Township of Mahwah find and determine that the unregulated and uncontrolled relocation, filling, excavation and removal of soil on a large scale has resulted in conditions detrimental to the public safety, health and

general welfare, substantially hampering and deterring the efforts of the Township of Mahwah to effectuate the general purpose of municipal planning."

Section 3 of the ordinance further illuminates that which the municipality sought to remedy. This section reads, in part:

"* * * the Township Committee in considering and reviewing the application and in arriving at its decision shall be guided and take into consideration the public health, safety and general welfare and particular consideration shall be given to the following factors:
 (a) Soil erosion by water and wind.
 (b) Drainage.
 (c) Soil Fertility.
 (d) Lateral support of slopes and grades of abutting streets and lands.
 (e) Land values and uses.
 (f) Such other factors as may bear upon or relate to the coordinated, adjusted and harmonious physical development of the Township."

The general purpose of soil removal ordinances was stated in *Fred v. Mayor and Council, Old Tappan Borough,* 10 *N. J.* 515, 521 (1952), as follows:

"There can be little question but that this broad grant of police powers to a municipality encompasses the authority to enact an ordinance regulating the removal of soil. Both common knowledge and the evidence adduced before the trial court indicate that such an ordinance not only may be desirable but necessary for the protection of property and the preservation of the public health and welfare of a municipality. In the defendant borough the removal of soil has for years constituted a serious problem. At least four property owners have stripped their lands and sold the soil leaving pits of considerable depth. Land thus denuded and deformed casts a blight on all the surrounding area: water collects and affords breeding places for mosquitos, drainage and erosion problems arise, normal vegetation cannot grow but noxious weeds thrive. In short, the land itself is not only rendered useless for all normal uses, but the value of other lands in the vicinity is substantially reduced and the residents of the area generally are subjected to unhealthy, annoying and unsightly conditions."

The purpose of the ordinance, therefore, which is gleaned from the above, is to eliminate indiscriminate and

uncontrolled soil removal in the interests of the protection of property and the preservation of the public health and welfare. To accomplish this, the municipality enacted the mandate prohibiting soil removal except upon application for a permit to the Township Committee with attendant proof that none of the detrimental results listed in section 3, above quoted, would eventuate.

The provision which renders unnecessary an application and permit antecedent to soil removal reads: "except in connection with the construction and alteration of a building on such premises, and excavation and grading incidental thereto." Although the phrases "in connection with the construction" and "excavation and grading incidental thereto" are joined by the conjunction "and" this does not connote that the ordinance contemplates two situations in which no permit is required. Rather, to effectuate the purpose of the enactment, the general words "in connection with the construction" must be read as modified or limited by the words "excavation and grading incidental thereto." In *Ford Motor Co. v. N. J. Dept. of Labor and Industry,* 5 *N. J.* 494 (1950), the court said at *p.* 502:

. "Ordinarily, the coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified by its associates of restricted sense. The general word is qualified by the particular word. *Jersey Central Power and Light Company v. State Board of Tax Appeals,* 131 *N. J. L.* 565 (*E. & A.* 1944). The principle is expressed in the doctrine of *noscitur a sociis* and the variant rule of *ejusdem generis.* A word is known from its associates."

For the ordinance to have the vitality to accomplish its avowed purpose, these phrases must be read to allow only such excavation and removal without a permit as is reasonably incidental to excavation necessarily required in connection with the construction of a building of the type intended, as, for instance, for the construction of cellars and footings, etc., and

for such grading of the terrain as is incidental to and necessary for providing reasonable access to the contemplated structure, drainage, landscaping, and the like. Such excavation and removal would normally be of a comparatively minor nature and, in any event, be insufficient to create the conditions sought to be avoided by the ordinance. Only by this interpretation can all of the sections of the ordinance be brought into harmony and its reason and spirit be brought to fruition.

To accord to the ordinance the meaning urged by plaintiff could produce an anomalous and absurd result. The supervisory control over indiscriminate soil removal could then be frustrated by the simple expedient subterfuge of erecting a building of small size upon a plot of land regardless of how large its area. Thus, to pursue plaintiff's argument to its logical conclusion, it could, on these 6½ acres of land, excavate and remove 76,000 cubic yards of soil without any permit, provided it were done in connection with the erection of a single small building. In this manner defendant could be rendered powerless to determine in advance whether the excavation and removal would cause the deleterious results which it sought by the ordinance to eliminate and to prevent untrammeled and detrimental soil removal. To state such a possibility is to demonstrate the fallacy of plaintiff's contention. Accordingly, we conclude that the exception is limited to excavation and grading which is reasonably incidental to and necessary for the construction of the building about to be or being erected.

We proceed, then, to consider whether plaintiff's intended excavation and removal falls within the exception as so construed. Under the facts here presented, we find that the proposed removal was not incidental to excavation and grading, as above defined, and, consequently, plaintiff was required to obtain a permit.

We come, therefore, to plaintiff's final contention, that under the proven facts it was, in any event, entitled to a permit. This necessitates an evaluation of the testimony ad-

duced at the hearing to ascertain whether the evidence before the Township Committee furnished a reasonable basis for its action. See *In re Public Service Electric and Gas Co.,* 35 *N. J.* 358, 376 (1961).

Although plaintiff argues that there was no evidence to sustain the municipal findings and conclusions, this is not an accurate statement of the proof. At the opening of the municipal hearing it was stipulated by the parties that a letter from the township engineer be admitted into evidence. This letter reads:

"I received a revised map indicating soil to be removed from property of L. P. Marron on West Ramapo Avenue. In response to your request for my review of the map I offer the following: One, the removal of soil as indicated will leave a peninsula of land 250 feet long extended towards Route 17 laying on the Marron land and on an adjoining lot. Two, a house built on the westerly lot will be at the foot of a slope which often results in wet soil, wet basement and unsatisfactory soil or sewage disposal.

Three, it is not necessary to make such extensive soil removal in order to build houses on these proposed lots. With a house setback of 75 feet the front yards can be graded to provide access driveways with maximum grade of 16% to 18%. These are not excessive grades for private drives."

The governing body could, therefore, weigh not only the testimony of plaintiff's engineer, but, also the contradictory statement of its own engineer and the other evidence adduced by the individual objectors. An assay of the testimony discloses that there existed a reasonable basis for defendant's findings.

Reversed.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance* — None.