APEX CUSTOM LEASE CORP.

v.

STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued Feb. 5, 1996.

Decided June 6, 1996.

John D. Bunker (orally), Paine, Lynch & Harris, P.A., Bangor, for Appellant.

Andrew Ketterer, Attorney General, Thomas A. Knowlton (orally), Assistant Attorney General, Augusta, for Appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

Apex Custom Lease Corporation, Inc. appeals from a summary judgment entered in the Superior Court (Hancock County, *Mead, J.*) in favor of the State Tax Assessor with respect to certain use and sales taxes imposed. Apex contends that its purchase of 27 motor vehicles from an affiliated automobile dealership which it then "leased back" to the dealership was not a "retail sale" pursuant to 36 M.R.S.A. § 1752(11) (Supp.1995), and hence not a "use" for purposes of the use tax provision of the Maine Sales and Use Tax, 36 M.R.S.A. § 1861 (Supp.1995). Apex further contends that its rental of telecommunications equipment to business customers is not a "taxable service" pursuant to 36 M.R.S.A. § 1752(17–A) (1990), and thus the rental payments it receives on that equipment are not subject to a sales tax pursuant to 36 M.R.S.A. § 1811 (Supp.1995). We affirm the judgment.

*Background*

Ellsworth Autohaus, Inc. is an automobile dealership. Helmut Weber is the president and sole shareholder of Autohaus. Weber is also president of Apex Leasing Corporation, Inc. and a one-third shareholder. In that capacity, he handles the administration of Apex's business. Because Apex does not have office facilities or staff (apart from Weber), Weber runs Apex from his office at Autohaus.

From June 30, 1987, to April 30, 1993 (the audit period), Autohaus and Apex participated in transactions involving 27 vehicles that followed a general pattern. Autohaus would purchase a motor vehicle from a supplier and then sell the vehicle to Apex shortly thereafter. No sales tax was paid on either the sale from the supplier to Autohaus,[1] or on the sale from Autohaus to Apex. Apex would then lease the vehicle back to Autohaus for a term of more than a year (generally three to four years). Autohaus would rent the vehicle to its own customers for short periods of time (typically because the customer's own car was in the shop for repairs), and it collected sales tax on the short-term rental receipts. After expiration of the lease between Apex and Autohaus, Apex would sell the vehicle back to Autohaus. Finally, Autohaus would sell the vehicle to a consumer-customer. A sales tax was charged and collected at the time of the ultimate sale from Autohaus to the consumer-customer.

According to both Weber and the Assessor, the purpose of these sale/leaseback transactions was to allow Autohaus access to its full line of credit. Both Apex and Autohaus had lines of credit with Bar Harbor Banking & Trust Company. The sale/leaseback transactions permitted Apex to use its line of credit in order to finance the original purchase of the vehicles by Autohaus. Auto-

---

1. This component of the transaction was exempt from the sales tax because the sale from the supplier to Autohaus was a "sale for resale." *See* 36 M.R.S.A. § 1752(11) (Supp.1995).

haus's line of credit thus remained available to Autohaus for use in other ways. The Assessor imposed a use tax on Apex for the purchase price of the vehicles sold by Autohaus to Apex, pursuant to 36 M.R.S.A. § 1861.

Apex also participated in the leasing of telecommunications equipment during the audit period. During that time, Apex acquired telecommunications equipment from suppliers and then leased that equipment to various businesses. These leases were for a term greater than one year, and they contained buy-out options for a nominal fee. Apex paid sales tax on purchasing the telecommunications equipment from suppliers, and a sales tax was paid by the lessee on the lessee's exercise of the buy-out option. The Assessor imposed a sales tax on the lease payments received by Apex pursuant to 36 M.R.S.A. § 1811.

Pursuant to 36 M.R.S.A. § 151 (Supp. 1995),[2] Apex requested administrative reconsideration of the assessment of both the use and sales taxes imposed. The Assessor upheld the assessment. Apex filed a petition for review in the Superior Court pursuant to M.R.Civ.P. 80C[3] and 36 M.R.S.A. § 151.[4] The Assessor moved for a summary judgment. The court granted a summary judgment and Apex appeals.

### Discussion

■ When the Superior Court reviews a decision of the State Tax Assessor, it does not exercise an appellate function. 36 M.R.S.A. § 151. Instead, the Superior Court conducts a hearing de novo on the propriety of the tax imposed. *Id.* We therefore review the Superior Court's decision directly.

2. The statute provides in relevant part:

Any person who is subject to an assessment by the State Tax Assessor or entitled by law to receive notice of a determination of the State Tax Assessor and who is aggrieved as a result of that action may request in writing, within 30 days after receipt of notice of the assessment or the determination, reconsideration by the State Tax Assessor of the assessment or the determination.

3. Rule 80C governs judicial review of final agency action.

4. The statute provides in relevant part:

*L.L. Bean, Inc. v. State Tax Assessor,* 649 A.2d 331, 332 (Me.1994).

■ In reviewing the grant of a summary judgment, we view the evidence in a light most favorable to the party against whom the judgment was entered and review the trial court's decision for errors of law. *Gonzales v. Commissioner, Dep't of Public Safety,* 665 A.2d 681, 682 (Me.1995). For a party to be entitled to a summary judgment, there must be no issues of material fact and the prevailing party must be entitled to a judgment as a matter of law. *Id.,* at 682–83. Pursuant to 36 M.R.S.A. § 1763 (1990),[5] the taxpayer protesting the imposition of a tax has the burden of demonstrating that the transaction in question is not taxable.

The material facts in this case are not disputed. The propriety of the court's entry of a summary judgment in favor of the Assessor therefore turns on whether the Assessor is entitled to a judgment as a matter of law.

### The automobile transactions

Maine imposes a tax "on the storage, use or other consumption in this State of tangible personal property ... the sale of which would be subject to tax under section 1764 or 1811 [the sales tax]." 36 M.R.S.A. § 1861. "Use" is defined thus:

'Use' includes the exercise in this State of any right or power over tangible personal property incident to its ownership *when purchased by the user at retail sale,* including the derivation of income, whether received in money or in the form of other benefits, by a lessor from the rental of tangible personal property located in this State.

The State Tax Assessor's decision on reconsideration constitutes final agency action that is subject to review by the Superior Court in accordance with the Maine Administrative Procedure Act, except that Title 5, sections 11006 and 11007 do not apply. The Superior Court shall conduct a de novo hearing and make a de novo determination of the merits of the case. It shall make its own determination as to all questions of fact or law.

5. 36 M.R.S.A. § 1763 provides:

The burden of proving that a transaction was not taxable shall be upon the person charged with tax liability.

36 M.R.S.A. § 1752(21) (1990) (emphasis added). "Retail sale," in turn, is defined as

any sale of tangible personal property in the ordinary course of business for any purpose other than for resale, except resale as a casual sale, in the form of tangible personal property.

36 M.R.S.A. § 1752(11) (Supp.1995). The definition of "business" includes

any activity engaged in by any person or caused to be engaged in by [that person] with the object of gain, benefit or advantage, either direct or indirect.

36 M.R.S.A. § 1752(1–C) (1990).

■ Apex contends that the use tax imposed by the Assessor was improper because Apex cannot legitimately be considered a "user" of the vehicles in question. This contention hinges on Apex's subsidiary argument that because Autohaus did not profit from the sales, Autohaus did not sell the vehicles to Apex in the ordinary course of its business and therefore Apex did not purchase the vehicles from Autohaus at retail sale. Apex nevertheless concedes that Autohaus benefitted from the sales by gaining access to Apex's line of credit. Citing this benefit, the Assessor contends that the sales took place within the ordinary course of business of Autohaus, and hence were retail sales subject to a use tax pursuant to 36 M.R.S.A. § 1861.

The plain language of the statute supports the Assessor. Autohaus derived a benefit from the sale of the vehicles to Apex. Thus the transactions fall within the definition of "business" as set forth in 36 M.R.S.A. § 1752(1–C), and hence the sales were "in the ordinary course of business" as required by the definition of "retail sale." The definition of "use," in turn, includes the purchase of tangible personal property at retail sale. 36 M.R.S.A. § 1752(21).

■ For a use tax to apply to a transaction, there must be a use *and* a purchase by the taxpayer. *Trimount Coin Machine Co. v. Johnson,* 152 Me. 109, 112, 124 A.2d 753, 755 (1956). The term purchase is not defined in the Maine Sales and Use Tax provisions. *See* 36 M.R.S.A. § 1752. Apex contends that the vehicle transactions are, in substance, financing transactions that cannot and should not be equated to "purchases" at retail sale. We disagree.

■ In construing a statutory term that is undefined in the statute itself, our primary obligation is to determine its plain meaning. *Mullen v. Liberty Mut. Ins. Co.,* 589 A.2d 1275, 1276–77 (Me.1991). We often rely on the definitions provided in dictionaries in making this determination. *Id.* at 1277. *See also Town of Madison v. Town of Norridgewock,* 544 A.2d 317, 319 (Me.1988). The dictionary defines a purchase as "[t]o obtain in exchange for money or its equivalent." WEBSTER'S NEW COLLEGE DICTIONARY at 1005 (2d ed. 1982). Apex obtained the vehicles from Autohaus in exchange for money. The statutory definitions for imposition of a use tax are satisfied and the Assessor was entitled to a judgment as a matter of law on the vehicle transactions.[6]

*Lease of telecommunications equipment*

The Assessor also imposed a sales tax on rental payments received by Apex pursuant to leases of telecommunications equipment to various businesses, on the theory that rental of the equipment was a "taxable service" as that term is defined in 36 M.R.S.A. §§ 1752(17–A).

---

**6.** In support of its argument, Apex cites to several cases from other jurisdictions. *See Footpress Corp. v. Strickland,* 242 Ga. 686, 251 S.E.2d 278 (1978) (holding that lease payments made pursuant to a sale/leaseback arrangement created solely for the purpose of facilitating a commercial loan were not subject to a state tax code provision providing for taxation of lease payments because the transaction was in substance a loan, not a lease); *Bullock v. Citizens Nat'l Bank of Waco,* 663 S.W.2d 923 (Tex.Ct.App.1984) (holding that sale component of a sale/leaseback transaction was not taxable under a state statute that called for imposition of a tax on all sales because the transaction was actually a financing arrangement); *In re Sherwood Diversified Servs., Inc.,* 382 F.Supp. 1359 (S.D.N.Y.1974) (holding that equipment leases were not subject to state tax code provision making leases taxable because they were in reality security agreements); *Cedars–Sinai Medical Ctr. v. State Bd. of Equalization,* 162 Cal.App.3d 1182, 208 Cal.Rptr. 837 (1984) (holding that a sale/leaseback transaction was a financing device that did not involve a true sale or a true lease that would have been subject to sales or use tax under state law). These cases from other jurisdictions, involving different tax statutes and different facts, are unpersuasive.

36 M.R.S.A. § 1811 states that "[a] tax is imposed on the value of all tangible personal property and taxable services sold at retail in this State...." The phrase "taxable service" includes "telephone or telegraph service," 36 M.R.S.A. § 1752(17–A)(C) (1990), that is defined as "all telecommunications or telegraph service, including installation or *use* of telecommunication or telegraphic equipment, but not including telecommunications or telegraph service originating or terminating outside this State," 36 M.R.S.A. § 1752(18–A) (Supp.1995) (emphasis added). "Use" is defined as "the exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale, *including the derivation of income, ... by a lessor from the rental of tangible personal property located in this State.*" 36 M.R.S.A. § 1752(21) (emphasis added).

Apex does not dispute that it leased the telecommunications equipment to various business and derived income therefrom. These transactions unmistakably involved the use of telecommunications equipment, and hence were a taxable service. *American Tel. & Tel. Co. v. State Tax Assessor*, 652 A.2d 107, 109 (Me.1995) (holding that "when the Taxpayers [AT & T] leased their telecommunication equipment, ... they were engaging in the sale of a taxable service."). Although Apex may have intended the equipment leases as a financing device, they nevertheless fall within the scope of the relevant statutory provisions. Accordingly, the Assessor was entitled to a judgment as a matter of law.[7]

The entry is:

Judgment affirmed.

All concurring.

---

7. This conclusion is buttressed by the legislative history accompanying a recent amendment to 36 M.R.S.A. § 1752(18–A). That amendment excludes the "use" of telephone equipment from the definition of "telephone or telegraph service" after October 1, 1996. Comm.Amend. A to L.D. 667, No. H–283 (117th Legis.1995). The Statement of Fact accompanying the amendment states that "This amendment makes the elimination of the sales tax on lease payments apply only to leases entered into on or after October 1, 1996." *Id.* That statement reflects a view in the Legislature that, prior to the amendment, the leasing of telephone equipment constituted a taxable "telephone or telegraph service."