2000 ME 186

**Norman BANGS et al.**

v.

**TOWN OF WELLS et al.**

Supreme Judicial Court of Maine.

Argued Sept. 8, 2000.
Decided Oct. 27, 2000.

---

Susan Bernstein Driscoll (orally), Christian L. Barner, Bergen & Parkinson, LLC, Kennebunk, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Norman Bangs and Blueberry Ridge Mobile Village, Inc., appeal from a judgment entered in the Superior Court (York County, *Crowley, J.*) denying their statutory and constitutional challenges to the Town of Wells Land Use Ordinance. Bangs and Blueberry Ridge argue that the Wells Ordinance impermissibly prohibits the expansion and development of mobile home parks in violation of (1) Maine's statute on Regulation of Manufactured Housing, 30–A M.R.S.A. § 4358 and (2) their rights to equal protection under the Maine and U.S. Constitutions. Because we agree that the Wells Ordinance violates the mandates of 30–A M.R.S.A. § 4358(3)(M), we vacate the judgment.

## I. BACKGROUND

[¶ 2] Norman Bangs owns two large parcels of land that abut a 43.8–acre piece of land owned by Blueberry Ridge Mobile Village, Inc. Blueberry Ridge, originally known as Wilson Mobile Home Park, is a Maine corporation formed by Bangs. Blueberry Ridge and Bangs are separate legal entities, but the parties agree that they are, for the purposes of this appeal, the same parties in interest.[1] Both the Bangs and Blueberry Ridge parcels are located in the Rural District (R) Zone in the Town of Wells.

[¶ 3] Blueberry Ridge currently exists as a "mobile home park"[2] with fifty-one mo-

Catherine R. Connors (orally), K. Douglas Erdmann, Portland, for plaintiffs.

1. We will refer to the appellants collectively as "Bangs."

2. The Ordinance defines "mobile home park" as "[a] parcel of land under unified ownership approved by the Town of Wells to accommodate three or more manufactured homes." Wells, Me., Code § 2 (May 11, 1997). The Ordinance mirrors the definition of a "mobile home park" found in the statute: "a parcel of land under unified ownership approved by the municipality for the placement of 3 or more manufactured homes." 30–A M.R.S.A. § 4358(1)(B) (1996).

bile homes in its lots. Because the Rural District Zone does not now allow mobile home parks to develop or exist within its territory, Blueberry Ridge is a nonconforming, grandfathered property under the Wells Land Use Ordinance. Blueberry Ridge conformed to the then-existing Ordinance at the time of its creation in 1977 as a residential subdivision, and, thus, its continued use is permitted in the Rural District Zone.

[¶ 4] In 1998, Bangs sought approval to expand Blueberry Ridge's use by adding thirty-eight new mobile home lots in the Bangs parcels. In effect, Bangs's plan was to create a new amalgamated mobile home park with a total of eighty-nine mobile homes [3] in the combined 132–acre Bangs and Blueberry Ridge parcels. Bangs relied on section 3.4 of the Ordinance, which allows "nonconforming development[s]" to expand "in any manner which does not increase the nonconforming aspect(s) of the development," for the approval of his request. Wells, Me., Code § 3.4 (May 11, 1997).

[¶ 5] The Wells Code Enforcement Officer denied Bangs's request, concluding that Blueberry Ridge is a mobile home park, which, by its nonconforming use, cannot expand in the Rural District Zone. The Wells Ordinance only allows expansion of a "nonconforming development," defined as *"[a] use permitted within a district* which does not conform to one or more of the standards within this ordinance regulating the use." Wells, Me., Code § 2 (emphasis added). Because Blueberry Ridge is a "mobile home park," a use that is *not* permitted within the Rural District Zone, the CEO reasoned that the Ordinance prohibited her from granting Bangs's request. In a letter denying Bangs's request, the Wells CEO concluded:

**3.** A "manufactured home" is "[a] structure built in a manufacturing facility, designed to be transported in two or less sections, to be used as a dwelling unit ...." Wells, Me.,

A mobile home park is a nonconforming use in the rural district and may not be expanded. This use is only permitted in the mobile home overlay district.

Letter from Wells Code Enforcement Officer to Allan Schwarte (Apr. 21, 1998).

[¶ 6] Bangs appealed the CEO's decision, and the Wells Zoning Board of Appeals denied the request based on the same reasoning. The Board concluded as follows:

### DECISION

It is therefore decided, by a vote of 5 to 0, to uphold the decision of the Code Enforcement Officer in that Blueberry Ridge Mobile Village, Inc. is a mobile home park and as such is not a permitted use in the Rural (R) District and, as a nonconforming use, cannot be expanded.

Letter from Wells Zoning Board of Appeals to Blueberry Ridge Mobile Village, Inc. (June 11, 1998).

[¶ 7] Pursuant to 5 M.R.S.A. § 11001 and M.R. Civ. P. 80B, Bangs appealed that decision to the Superior Court in a complaint that included several independent claims challenging the Wells Ordinance. The Superior Court (*Brennan, J.*) denied Bangs's administrative appeal, agreeing with the Board's interpretation of the Ordinance. The court reasoned that Blueberry Ridge is a "nonconforming use," which, under the Ordinance, cannot expand beyond mere changes to existing structures.

[¶ 8] The remaining independent claims were tried in the York County Superior Court (*Crowley, J.*) in a four-day, jury-waived trial. The court entered judgment in favor of the Town on all counts. This appeal followed.

Code § 2. "Mobile homes" and "modular homes" are subsets of this category. *See* 30–A M.R.S.A. § 4358(1)(A) (1996 & Supp.1999).

## II. DISCUSSION

[¶ 9] Bangs raises two questions of law for our review. We review questions of law de novo. *City of Saco v. Pulsifer*, 2000 ME 74, ¶ 5, 749 A.2d 153, 154. Bangs argues that the Wells Land Use Ordinance is invalid because the Ordinance (i) violates Maine's statute on Regulation of Manufactured Housing, 30–A M.R.S.A. § 4358 (1996 & Supp.1999), and (ii) discriminates against mobile home parks in violation of the equal protection rights of the Maine and U .S. Constitutions.[4] On de novo review, we examine the entire record before us for errors of law. *Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, ¶ 18, 745 A.2d 387, 392.

### A. Maine's Statute on Regulation of Mobile Homes

[¶ 10] We address Bangs's statutory claim first.[5] Maine's statute on Regulation of Manufactured Homes, as it now stands, is comprised of two distinct subsections that separately address municipalities' regulation of manufactured homes and mobile home parks. 30–A M.R.S.A. § 4358. Since its enactment in 1983, the Legislature has amended the statute substantively at least four separate times. In order to provide a better understanding of the statute's current scheme, we review the statute's legislative history. *See Kimball*, 2000 ME 20, ¶ 9, 745 A.2d at 390.

### 1. Subsection 2, "Location of Manufactured Housing"

[¶ 11] The provisions contained in section 4358(2) were first enacted in 1983 when the Legislature passed "An Act to Permit the Location of Manufactured Housing on Individual House Lots." P.L. 1983, ch. 424 (now codified as 30–A M.R.S.A. § 4358(2)). With this Act, the Legislature sought to ensure the placement of manufactured homes on individual lots "in most locations where there is a mixture of housing types and opportunities." L.D. 1441, Statement of Fact (111th Legis.1983).[6] The Act mandated municipalities to allow manufactured homes in "a number of locations" but gave them the discretion to exclude manufactured homes from certain areas in which they would not be compatible with the architecture of existing structures. *Id.* Since its enactment, we have invalidated zoning ordinances that have had the effect of prohibiting the placement of manufactured homes anywhere in town. *See, e.g., Paladac v. City of Rockland*, 558 A.2d 372, 376 (Me.1989).

[¶ 12] In 1993 and 1995, the Legislature amended the Act and strengthened its original inclusionary intent. L.D. 397 (116th Legis.1993); L.D. 285 (117th Legis.1995). With the "Act to Ensure Equitable Treatment of Manufactured Home

---

4. "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1; ME. CONST. art. I, § 6–A. The United States and Maine Constitutions guarantee the same right to equal protection.

5. *See Your Home, Inc. v. City of Portland*, 432 A.2d 1250, 1257 (Me.1981) ("[W]e avoid expressing opinions on constitutional law whenever a non-constitutional resolution of the issues renders a constitutional ruling unnecessary.").

6. In its Statement of Fact, the Legislature stated:

STATEMENT OF FACT

...

During the past 20 years, municipalities have restricted the location of trailers and mobile homes, many of which were unsafe, poorly built and deemed to be an undesirable form of housing. Since 1975, however, the State Government and the Federal Government have regulated the construction of mobile and modular homes ... to the point where the quality of manufactured housing is now on a par with site-built housing.

Efforts to convince municipalities to voluntarily change their restrictions have either failed or met with limited success.... This bill requires that such municipalities take affirmative action, and exert a good-faith effort, to reasonably accommodate manufactured housing.

L.D. 1441, Statement of Fact (111th Legis.1983).

Owners" and the "Act Concerning Placement of Modular Homes," the Legislature added new provisions requiring municipalities to allow individual manufactured homes "in *all zones* where other single-family homes are allowed ." 30–A M.R.S.A. § 4358(2)(E) (emphasis added).[7] Contrary to the discretionary language of the 1983 Act, the 1993 and 1995 Acts provided municipalities with a simpler mandate: municipalities may no longer designate areas that are either uniquely appropriate or inappropriate for the placement of manufactured homes on individual lots; where single-family housing is permitted, single-family manufactured housing must also be permitted.

### 2. Subsection 3, "Regulation of Mobile Home Parks"

[¶ 13] In 1988 and 1989, the Legislature added to the original Act a new subsection regarding municipalities' regulation of "mobile home parks." 30–A M.R.S.A. § 4358(3). In 1988, citing both the shortage of spaces for mobile homes and a rapid increase in land and housing costs, the Legislature passed an "Act to Provide Greater Protection to Owners of Mobile Homes and Mobile Home Parks." L.D. 2147 (113th Legis.1988). In response to an apparent shortage of affordable housing, the 1988 Act added two directives to municipalities regarding mobile home parks. *Id.* Municipalities must permit the expansion and development of new mobile home parks "in a number of environmentally suitable locations." 30 M.R.S.A. § 4965(3)(A) (1988) (repealed and recodified as 30–A M.R.S.A. § 4358(3)(M)). Municipalities must also give "reasonable consideration" to permitting existing mobile home parks to expand in their existing locations. *Id.*[8]

[¶ 14] In the subsequent year, the Legislature again addressed the needs of mobile home parks by passing "An Act Regarding Minimum Lot Sizes and Other Municipal Regulations Concerning Mobile Home Parks." L.D. 1205 (114th Legis.1989). The 1989 Act repeated some of the same concerns of the 1988 Act, but this time the Legislature limited the municipalities' power to regulate the internal density and overall area requirements of mobile home parks. 30–A M.R.S.A. §§ 4358(3)(A)–4358(3)(K). Together, the 1988 and 1989 Acts provided a legislative scheme that required municipalities to permit the development and expansion of mobile home parks, while limiting the municipalities' power to regulate their density and overall area requirements. 30–A M.R.S.A. § 4358(3).

[¶ 15] Thus, in its current form, Maine's statute on Regulation of Manufactured Housing provides municipalities with three general mandates. Municipalities must (i) allow the placement of manufactured homes on individual lots in all areas where other single-family homes would be allowed, 30–A M.R.S.A. § 4358(2)(E); (ii)

---

7. Subsection 4358(2)(E) provides:
   **2. Location of manufactured housing.**
   . . .
   **E.** Notwithstanding any other provision of law, any modular home that meets construction standards for state-certified manufactured homes adopted pursuant to Title 10, section 9042 must be allowed in all zones where other single-family homes are allowed.
   30–A M.R.S.A. § 4358(2)(E).

8. Subsection 3(M) provides:
   **3. Regulation of mobile home parks.**
   . . .
   **M.** A municipality shall permit mobile home parks to expand and to be developed in a number of environmentally suitable locations in the municipality with reasonable consideration being given to permit existing mobile home parks to expand in their existing locations. A municipality may not select a location for a mobile home park development which is not reasonably suitable because of:
   **1)** Prior lot division;
   **2)** Locational setting within the municipality;
   **3)** Natural features; or
   **4)** Other similar factors.
   This paragraph is effective January 1, 1990.
   30–A M.R.S.A. § 4358(3)(M).

permit new mobile parks to develop and to expand in a number of environmentally suitable locations, 30–A M.R.S.A. § 4358(3)(M); and (iii) give reasonable consideration to permitting existing mobile home parks to expand in their current locations, *id.* These directives constitute an express limitation on municipalities' otherwise broad zoning powers. *See* 30–A M.R.S.A. § 3001.

## B. The Wells Ordinance

[¶ 16] With these requirements in mind, we examine the Wells Ordinance to determine whether it violates the mandates of 30–A M.R.S.A. § 4358. *See Int'l Paper Co. v. Town of Jay,* 665 A.2d 998, 1001–02 (Me.1995).

[¶ 17] Only the third requirement is implicated in this appeal. Specifically, Bangs argues that the Ordinance fails to comply with the mandate contained in 30–A M.R.S.A. § 4358(3)(M), requiring municipalities to give "reasonable consideration . . . to permit existing mobile home parks to expand in their existing locations." 30–A M.R.S.A. § 4358(3)(M). We agree. Although the Ordinance creates a zone for new mobile home parks, it limits the development and expansion of all mobile home parks exclusively to this zone. Pursuant to the Ordinance, all mobile home parks that exist outside the "mobile home park overlay district" zone are deemed "nonconforming uses" that cannot expand beyond their current locations. Wells, Me., Code § 2. Consequently, the Ordinance flatly prohibits Bangs's mobile home park from being given any consideration whatsoever, let alone a "reasonable consideration," to expand beyond its current location.

[¶ 18] Nonetheless, Wells contends that it has met the statutory directives under section 4358, because subsection 3(M) only requires municipalities to allow existing mobile home parks to expand *within* their current locations. *See* 30–A M.R.S.A. § 4358(3)(M). In essence, Wells argues that municipalities need only give reasonable consideration to allowing existing mobile home parks to accommodate more mobile home lots *"in* their current locations" or, in other words, within their existing borders. *See id.* (emphasis added). Such an interpretation would require reasonable consideration of requests to increase density, but not to increase dimension.

[¶ 19] Wells's interpretation of subsection 3(M) is not consistent with the plain language of the statute. *See Kimball,* 2000 ME 20, ¶ 18, 745 A.2d at 392 (explaining the rules of statutory construction). The plain meaning of the word "expand" means "to make or become greater in size." [9] WEBSTER'S II NEW RIVERSIDE DICTIONARY 241 (1996). Further, the language of the statute requires that municipalities give reasonable consideration to the expansion of existing "mobile home parks" as opposed to allowing "mobile home park lots" or "mobile home park density" to expand. Therefore, a logical and consistent reading of the statute encompasses mobile home parks' growth in physical area rather than merely in density. *See Town of Madison, Dep't of Elec. Works v. Pub. Utils. Comm'n,* 682 A.2d 231, 234 (Me.1996).

In addition, the overall structure of section 4358(3) provides evidence that the Legislature intended to allow existing mobile home parks to expand in physical area. *See Home Builders Ass'n of Maine, Inc. v. Town of Eliot,* 2000 ME 82, ¶ 13, 750 A.2d 566, 571 ("the meaning intended

---

9. "In construing a statutory term that is undefined in the statute itself, our primary obligation is to determine its plain meaning." *Apex Custom Lease Corp. v. State Tax Assessor,* 677 A.2d 530, 533 (Me.1996) (citation omitted). "We often rely on the definitions provided in dictionaries in making this determi-

nation." *Id. See also Darling's v. Ford Motor Co.,* 1998 ME 232, ¶ 14, 719 A.2d 111, 116 (Me.1998) ("In the absence of evidence to the contrary, we conclude that the Legislature intended the generally accepted meanings of the terms to apply.").

by the Legislature ... can only be understood in the context of the legislation within which the word is used"). With the exception of subsection 3(I), which deals with buffer strips, subsections 3(A) through 3(J) all address the regulation of areas that are internal to a mobile home park.[10] After this extensive list, subsection 3(K) provides a general catch-all provision that prohibits municipalities from enacting laws that may circumvent the density and internal area requirements of the previous subsections. 30–A M.R.S.A. § 4358(3)(K). Then, after an unrelated provision in 3(L) specifying the burden of the developer to prove certain conformities of the mobile home park, the Legislature sets forth the expansion requirements of subsection 3(M). In accordance with this legislative scheme, a logical reading of section 4358(3) leads us to conclude that the Legislature intended subsection 3(M) to address dimensional expansions of mobile home parks.

[¶ 21] The Wells Ordinance unambiguously prohibits the dimensional expansion of any mobile home park, except in the limited areas set aside for new mobile home park development. Thus, it fails to give "reasonable consideration" to requests for expansion of parks *in their current locations* and violates 30–A M.R.S.A. § 4358(3)(M). Although the Legislature has not defined "reasonable consideration," its plain meaning requires, at a minimum, more than what Wells has done. Thus, we need not determine what standards or criteria the Town must apply in order to meet the "reasonable consideration" requirement.[11]

The entry is:

Judgment vacated and remanded to the Superior Court for remand to the Town of Wells Code Enforcement Officer for action consistent with this opinion. The Town of Wells Ordinance is declared invalid insofar as it prohibits the reasonable consideration of expansion of existing mobile home parks.

---

**10.** Subsection 3(A) sets maximum density requirements; subsection 3(B) sets maximum overall area requirements; subsections 3(C) and (D) provide maximum setback requirements; subsection 3(E) prohibits road frontage requirements on mobile home park lots; subsections 3(F), (G), and (H) provide for regulation of roads within the park; subsection 3(I) sets maximum buffer strip requirements along a mobile home park's boundary; and subsection 3(J) prohibits municipalities from regulating the location of electric and phone lines in a mobile home park. 30–A M.R.S.A. §§ 4358(3)(A)–4358(3)(J).

**11.** Because we so hold, we need not reach Bangs's constitutional question. *See Your Home, Inc.*, 432 A.2d at 1256–57.