STATE OF MAINE                                      SUPERIOR COURT
YORK, SS.                                           CIVIL ACTION
                                                    DOCKET NO. AP-13-040

STEPHEN A. HYNES, TRUSTEE
STEPHEN A. HYNES REAL
PROPERTY TRUST AGREEMENT
DATED MARCH 29, 1995

Plaintiff,

v.                                                  **ORDER**

TOWN OF KITTERY, MAINE and
THE PLANNING BOARD OF SAID
TOWN,

Defendants.

## I. Background

Plaintiff Stephen A. Hynes ("Hynes") brings this M.R. Civ. P. 80B appeal from a decision of the Town of Kittery Planning Board ("the Town") denying a request to expand a mobile home park. Hynes also brings an independent claim seeking a declaration that the ordinance is preempted by 30-A M.R.S. § 4358 and inconsistent with the Law Court's decision in *Bangs v. Town of Wells*, 2000 ME 186, ¶ 20, 760 A.2d 632.

### A. Facts

Hynes owns the Yankee Commons Home Park ("Yankee Commons") in Kittery, Maine, which is composed of 63 mobile homes. In 2011, Hynes sought to expand Yankee

1

Commons with 79 more mobile homes ("the Expansion Project") into an adjacent 50-acre lot ("the Proposed Site") that he also owns. Most of the Proposed Site is located in the Mixed-Use Zone of Kittery, with smaller portions zoned Residential-Rural and as a Shoreland and Resource Protection Overlay Zone. Current designs for the Expansion Project require excavation and removal of a substantial amount of earth to create a level surface for construction.

## B. Procedural History

Hynes pursued several applications that advanced through a number of municipal decision makers before arriving in this court. The procedural history is thus somewhat complicated. After commencing discussions with the Town about a project to expand Yankee Commons, Hynes submitted a Subdivision Sketch Plan Review Application on December 20, 2011, which was accepted by the Planning Board. The Board visited the Proposed Site on September 4, 2012.

At a public hearing on September 13, 2012, Hynes presented the Application to the Planning Board. The Planning Board found the amount of excavation required for the Proposed Expansion "excessive" and not incidental, and advised Hynes to either (1) seek a mineral extraction permit from the Code Enforcement Officer ("CEO"), or (2) resubmit a new application with less excavation. Hynes disagreed that a mineral extraction permit was required on the grounds the excavation was merely "incidental" to the project. Under the mineral excavation permit requirements, there is an exception for "incidental" excavation, which does not require a permit.

Despite believing a permit was not required, Hynes applied for one with the CEO. The CEO denied the application because mineral extraction is not a permitted use in the

2

Mixed-Use Zone, and directed Hynes to appeal to the Board of Appeals ("BOA"). The BOA reversed the CEO, concluding it had jurisdiction to consider the application and, as pressed by Hynes, the excavation was incidental to the Expansion Project.

With a favorable decision from the BOA, Hynes returned to the Planning Board. The Planning Board refused to reconsider the finding that the excavation was not incidental to the project, concluding that the BOA lacked jurisdiction to hear the appeal because the mineral extraction permit review process requires the CEO make a recommendation, which is forwarded to the Planning Board to make an ultimate decision.

After the Planning Board refused to revisit the matter, Hynes filed a second application with the CEO for a mineral extraction permit. This time, the CEO issued a recommendation to the Planning Board that the project receive consideration for the permit only in the Residential-Rural Zone because mineral extraction was not a permitted use under the zoning that applied to rest of the Proposed Site.

The Planning Board denied the Subdivision Review Application on September 26, 2013, ruling: (1) the Proposed Expansion requires a mineral extraction permit because the quantity of excavation required is not "incidental" to the project, and such a permit could not issue because mineral extraction is not permitted in the Mixed-Use Zone, and (2) mobile home parks are not permitted in the Mixed-Use Zone, and the ordinance is not preempted by 30-A M.R.S. § 4358 because single family homes are similarly not permitted.

## II. Discussion

### A. Rule 80B Appeals Standard

3

Rule 80B appeals require the court to review the fact-finder's decision below for errors of law, abuse of discretion, or findings not supported by substantial evidence. *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, ¶ 9, 2 A.3d 284; *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024.

Construction of a municipal ordinance is a question of law reviewed under a de novo standard. *Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3, 836 A.2d 1285. The court considers "the plain meaning of the statutory language to give effect to legislative intent, and if the meaning of the statute is clear on its face, then we need not look beyond the words themselves.'" *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 7, 946 A.2d 408 (citations omitted). "Undefined terms should be given their common and generally accepted meaning unless the context clearly indicates otherwise." *Ballard, Inc. v. Westbrook*, 502 A.2d 476, 480 (Me. 1985).

### B. Whether a Mineral Extraction Permit Is Required

#### 1. Whether the Town is Bound by the BOA's Decision

The parties begin with procedural arguments about whether the CEO had authority to make the initial decision that led to the BOA decision in Hynes' favor, which the Planning Board declined to follow stating the BOA lacked jurisdiction. These arguments need not be considered because the parties agree that the CEO and BOA do not have the ultimate authority to grant or deny mineral extraction special permits, but rather the power rests with the Planning Board. (Def.'s Brief 23-24.) If however Hynes is not required to obtain the permit, the Planning Board's authority with respect to a mineral extraction permit determination is moot. The issue therefore turns on whether Hynes needs the permit in the first place.

4

## 2. The Meaning of "Incidental"

As illustrated by the conflicting dispositions below, whether the Proposed Expansion requires a mineral extraction special permit depends on whether the excavation can be properly characterized as "incidental" to the project. Under the Ordinance,

> Topsoil, rock, sand, gravel and similar earth materials may be removed from locations where permitted under the terms of this Code, only after a special permit for such operations has been issued by the Code Enforcement Officer upon approval and review of the plans by the Planning Board in accordance with the provisions of this Code, and provided that nothing herein may be deemed to apply to normal excavation operations incidental to construction activities for which a valid permit is held.

Kittery, Me., Code § 16.9.1.2(A). Relevant here is the meaning of "normal excavation operations incidental to construction activities for which a valid permit is held." "Incidental" is not defined. The parties thump competing dictionaries that they believe confirm their preferred definition of "incidental," which range from Merriam-Webster's: "being likely to ensue as a chance or minor consequence," Def.'s Brief 21, to Black's Law Dictionary: "[d]epending upon or pertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal." (Pl.'s Brief 24.)

In Hynes' view, the Planning Board improperly applied a quantitative rather than a qualitative standard. (Pl.'s Brief 24.) In other words, the Planning Board looked to the *amount* to be excavated rather than the excavation's *purpose*. Because the primary purpose of the Proposed Expansion is to expand Yankee Commons, any excavation, regardless of how substantial, is incidental to the construction Hynes wants to build. The Town urges a reading that considers quantity, which could transform this into a factual

5

issue that would entitle the Town's determination to greater deference. (Def.'s Brief 20.) To that end, the Town contends the excavation is not "incidental" because (1) Hynes seeks to level a hill and remove up to 10,000 truckloads of materials, and (2) intends to sell the material, which means the project "resembles a commercial quarrying or mining operation far greater in scope than normal site work." (Def.'s Brief 22.)

Despite the Town's urging that this court confer deference to the Planning Board's interpretation, there is no dispute as to the quantity or character of materials to be excavated, and thus no factual determination below that warrants deference. This is not a case where the court defers to a Town's characterization of a structure, *Jordan*, 2003 ME 82, ¶¶ 8-9, 828 A.2d 768, or to a Town's choice between two competing use categorizations for zoning. *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684. The basis for the Planning Board's decision under review here was not dependent on any factual findings. Rather than applying facts, construing "incidental" can proceed under an "ordinary meaning" analysis—a question of law. *See Jade Realty Corp.*, 2008 ME 80, ¶ 7, 946 A.2d 408 (court should give terms "their common and generally accepted meaning unless indicated otherwise by their context in the ordinance") (citations omitted).

Hynes' interpretation is more persuasive for several reasons. As a practical matter, any number of projects would have to obtain mineral extraction special permits because the threshold—100 cubic yards—is relatively low considering the size of the lot and the other uses permitted in the Mixed-Use Zone. The exclusion under 16.9.1.2(A) for "normal excavation operations incidental to construction activities for which a valid permit is held" clearly intended for construction projects requiring excavation operations to be exempted from the permit process. If "incidental" was meant to cover quantities of

6

material, then the drafters of the ordinance could have included thresholds defining when excavation for construction became so substantial that an excavation permit would be required. The drafters considered quantity only in the triggering threshold, and aside from that 100 cubic yard threshold (which remains subject to the "incidental" exception), the ordinance does not contemplate quantity. The Town's interpretation has no explicit support in the ordinance.

Similar mineral extraction ordinances from other jurisdictions support the interpretation that if excavation occurs as part of a project that is primarily construction-oriented, the removal of materials, regardless of quantity, is still "incidental" and exempt from permitting requirements. *See, e.g., Pipkin v. Cnty. of Douglas*, 158 Wash. App. 1056 (2010) ("'Mineral extraction' specifically excludes from its definition '[t]he leveling, grading, filling, or removal of materials during the course of normal site preparation for an approved use.'"); *Athens Metro. Hous. Auth. v. Pierson*, 2002 WL 851767 *6 (Ohio App. Ct. 2002) (exempting removal of materials incidental to construction work from excavation permit requirement); *Linde Enterprises, Inc. v. Pennsylvania Dep't of Envtl. Prot.*, 692 A.2d 645, 650 (Pa. Commw. Ct. 1997) (minerals removed "incidental" if excavator shows the work was concurrent with construction, limited to the construction area, and construction reasonably related to the use); *L. P. Marron & Co. v. Mahwah Twp.*, 39 N.J. 74, 82, 187 A.2d 593, 597 (1963) (excavation and grading incidental to construction and exempt from soil removal permit).

Because the ordinance does not contemplate quantity in relation to "incidental," a qualitative analysis is appropriate, and excavation is incidental to Hynes' primary purpose—to construct the Proposed Expansion to Yankee Commons. While Hynes does

7

plan to sell some of the materials, this hardly transforms the project from a mobile home park expansion into a commercial quarrying operation. (Def.'s Brief 22.) Once leveled, the excavation will end, and thus there is nothing approaching a continuous and ongoing mineral extraction operation contemplated by the special permit procedure.

In sum, the Planning Board erred as a matter of law that Hynes was required to obtain a mineral extraction special permit to proceed with the Proposed Expansion application. The court next turns to whether the Planning Board's decision comports with 30-A M.R.S. § 4358 and the Law Court's decision in *Bangs v. Town of Wells*, 2000 ME 186, 760 A.2d 632.

## C. The Effect of 30-A M.R.S. § 4358

The Law Court succinctly explained the statutory mandates for municipalities in regulating manufactured homes as follows:

> Municipalities must (i) allow the placement of manufactured homes on individual lots in all areas where other single-family homes would be allowed, 30–A M.R.S.A. § 4358(2)(E); (ii) permit new mobile parks to develop and to expand in a number of environmentally suitable locations, 30–A M.R.S.A. § 4358(3)(M); and (iii) give reasonable consideration to permitting existing mobile home parks to expand in their current locations, *id.* These directives constitute an express limitation on municipalities' otherwise broad zoning powers. *See* 30–A M.R.S.A. § 3001.

*Bangs v. Town of Wells*, 2000 ME 186, ¶ 15, 760 A.2d 632. The Law Court has made the legislature's purpose in enacting this statutory scheme abundantly clear: municipalities may not use zoning powers to keep affordable housing such as mobile and manufactured home developments out of their communities. *See id.* Whether the Town's ordinance prohibiting mobile home parks is consistent with Section 4358 presents a question of law. *Id.* ¶ 9.

The present case is squarely on point with the Law Court's decision in *Bangs v. Town of Wells*, 2000 ME 186, 760 A.2d 632. In *Bangs*, a developer sought to expand a pre-existing nonconforming mobile home park in an area of Wells zoned as a rural district. Wells denied the owner's application reasoning that a mobile home park is not a use permitted in the rural district. *Id.* ¶ 5.

The Law Court reversed. The Town had confined mobile home parks to a specific overlay district, which contravened 30-A M.R.S. § 4358(3)(M), requiring municipalities give "reasonable consideration . . . to permit existing mobile home parks to expand in their existing locations." *Bangs v. Town of Wells*, 2000 ME 186, 760 A.2d 632. By confining eligible sites to that district, Wells gave *no consideration* to projects outside the district, in direct violation of the statute. The Court further rejected Wells' argument that the statute contemplated density rather space, reading "expand" to mean projects could grow beyond their physical boundaries. *Id.* ¶ 19-21.

Like the developer in *Bangs*, Hynes wishes to expand Yankee Commons. The Planning Board summarily rejected Hynes' plan. The Town argues that *Bangs* does not control because a mineral extraction permit is required and such a use is not permitted in the Mixed-Use Zone. For the reasons discussed above, however, Hynes was not required to obtain the permit. By treating the application as one that required an unobtainable mineral extraction permit, the Town plainly failed to give "reasonable consideration" to the project. See *Bangs*, 2000 ME 186, ¶ 21, 760 A.2d 632 ("Although the Legislature has not defined 'reasonable consideration,' its plain meaning requires, at a minimum, more than what [Kittery] has done.")

9

The Town also failed to give the Proposed Expansion "reasonable consideration" by concluding the mobile home parks were not permitted in the Mixed-Use Zone. The Legislature has required municipalities to give "reasonable consideration" to proposals like Hynes's that wish to expand an existing mobile home park. *Bangs*, 2000 ME 186, ¶ 15, 760 A.2d 632.[1] Because Kittery, like Wells, categorically prohibits manufactured housing from a zoning district, this violates the mandate of the statute and *Bangs. See id.* ¶ 17. ("[T]he Ordinance flatly prohibits Bangs's mobile home park from being given any consideration whatsoever, let alone a 'reasonable consideration,' to expand beyond its current location.") For that reason, Kittery's ordinance violates 30-A M.R.S. § 4358.

While the Town's prohibition on manufactured housing in the Mixed-Use Zone is invalid, this does not mean the Town must permit all mobile and manufactured home projects in that zone. Rather, the projects must simply receive "reasonable consideration" in light of applicable law, which the Proposed Expansion in this case clearly did not receive. The court reaches no conclusions as to the Proposed Expansion's compliance with other aspects of the Kittery ordinances and Maine's Manufactured Housing statute. Those issues, including the "environmental suitability" of the site, require factual findings by the Town in the first instance on remand. *See, e.g.*, 30–A M.R.S.A. § 4358(3)(M) (requiring "mobile home parks to expand and to be developed *in a number of environmentally suitable locations* in the municipality") (emphasis added). While the excavation at the site does not require a mineral extraction permit, the quantity and

---

[1] Although the parties dispute whether single-family homes would be permitted on the Proposed Site, this is irrelevant. Like the developer in Bangs, this is an existing mobile home park and therefore only the "reasonable consideration" standard under 30–A M.R.S.A. § 4358(3)(M) is implicated by Hynes' Proposed Expansion. *See Bangs*, 2000 ME 118, ¶ 17.

10

character of materials to be removed is still relevant to the Town's consideration of the Proposed Expansion.

### III.    Conclusion

The Town erred by requiring Hynes to obtain a mineral extraction permit because the proposed excavation is "incidental" to the construction on the site. By requiring the permit and determining mobile home parks were not permitted in the Mixed-Use Zone, the Town failed to give the Proposed Project "reasonable consideration" under 30–A M.R.S.A. § 4358(3)(M).

The entry shall be:

Hynes' Rule 80B appeal is hereby GRANTED, the decision of the Town of Kittery Planning Board is VACATED and REMANDED for further proceedings consistent with this decision. The court further declares that Kittery's ordinance prohibiting mobile home parks from the Mixed-Use Zone is invalid under 30-A M.R.S. § 4358(3)(M).

SO ORDERED.

DATE: March _11_, 2015

John O'Neil, Jr.
Justice, Superior Court

AP-13-40

ATTORNEY FOR PLAINTIFF:
BRIAN M RAYBACK
PIERCE ATWOOD – MERRILL'S WHARF
254 COMMERCIAL STREET
PORTLAND ME  04101

ATTORNEYS FOR DEFENDANT:
WILLIAM H DALE
MARK A BOWER
JENSEN BAIRD GARDNER & HENRY
P.O. 4510
PORTLAND ME  04112