**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3709-22

WILLIAM E. TAYLOR, IV,
and RACHEL TAYLOR,

      Plaintiffs-Appellants,

v.

ZONING BOARD OF THE
TOWNSHIP OF NEPTUNE
IN THE COUNTY OF
MONMOUTH and the
TOWNSHIP OF NEPTUNE
IN THE COUNTY OF
MONMOUTH,

      Defendants-Respondents.

_____

Argued October 22, 2024 – Decided February 25, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1080-22.

James T. Hundley (Law Offices of James T. Hundley, LLC) argued the cause for appellants.

Monica C. Kowalski (Law Offices of Monica C. Kowalski, LLC) argued the cause for respondents.

PER CURIAM

Plaintiffs William and Rachel Taylor[1] appeal from the June 20, 2023 Law Division order dismissing their complaint in lieu of prerogative writs. Plaintiffs challenged the decision of defendants Township of Neptune (Township) and Zoning Board of Adjustment (Board), denying their retroactive application to construct three walkways in a designated historic area adjacent to the front of their home. We affirm.

I.

Plaintiffs are the owners of a leasehold interest in a single-family home (Property) located within the Ocean Grove Historic Zone District (Historic Zone District), designated as HD-O Historic District Oceanfront. The Property was constructed around 1888 and is considered a "Key Structure" as defined in the Historic District's Design Guidelines for Residential Structures (Design Guidelines) in the Township.[2] The Historic Zone District has been registered as

---

[1] We refer to the parties by their first name because they share a common surname. No disrespect is intended.

[2] The purpose of the Design Guidelines is to expand § 507 Historical District Streetscape Design Standards and § 508 Historic Preservation Design

a National Historic District in the National Register of Historic Places known for its architecture.  The Historic Preservation Committee (HPC) regulates the architectural features on the exterior of every property located in Ocean Grove to maintain the designation on the National Historic Registrar.

The home is contiguous with the Historic Flare Open Space (Historic Flare), which is owned by the Ocean Grove Camp Meeting Association (Association).  The Historic Flare is defined in § 201 of the Township's Land Development Ordinance (LDO) as "an unobstructed area located between the curb line and the front leasehold line at particular properties within the Historic Zone District" and only one walkway is permitted.

The Property has been owned by William's family since the 1930's.  It has two concrete walkways to enter and exit the home.  One walkway runs from the public sidewalk, across the Historic Flare, to the home's front entrance.  The

---

Guidelines of the LDO.  See Design Guidelines at p. 1.  The Design Guidelines provides "[a]ll exterior work performed on or around any existing or proposed single family . . . within the Ocean Grove Historic District is subject to and must comply with the standards and intent of [the Design Guidelines]."  Id. at p.2

Design Guidelines categorizes residential structures in four major classifications.  Key Structures "includes those dwellings originally constructed between 1880's and 1910. Those consisting primarily of Eastlake, Gothic Revival, Italianate, Stick Tyle, Queen Annes and Early Summer Cottage Vernacular styles."  Id. at p. 9.

A-3709-22

other walkway runs from the public sidewalk, across the Historic Flare, to a second entrance on the west side of the home.

William acquired the Property in 2012, approximately one month before the Property sustained damage from Superstorm Sandy (Sandy). According to William, "the house . . . needed to be completely gutted and basically rebuilt from its studs up" after Sandy. He described the two walkways as "parts of the pavers were missing," "cracked," "damaged," and "needed to be repaired."

After a Certificate of Appropriateness (COA) was issued by the HPC, construction began on the Property. During construction, plaintiffs received notices of HPC violations for failing to adhere to the issued COA and several actions in lieu of prerogative writs were filed in the Law Division. Thereafter, in 2016, plaintiffs and the Township reached a settlement and construction resumed.[3]

There is no dispute plaintiffs' initial application for a COA did not include a request or approval to repair or replace the walkways. In 2018, plaintiffs removed the broken concrete slabs from both walkways and installed concrete unit pavers. Plaintiffs also installed a third "U-shaped" concrete unit paver

_____

[3] Neither the settlement agreement nor stipulation of dismissal in <u>Taylor v. Township of Neptune</u>, Docket No. L-1206-16, were included in the record on this appeal.

walkway to connect the front and side walkways in the Historic Flare. Each walkway was no greater than six feet wide.

In March 2019, the Township zoning officer filed three municipal complaints against William, charging him with violating three ordinances: (1) § 1102 for constructing walkways on the Property without obtaining zoning approval; (2) § 413.02 for constructing structures in the Historic Flare without obtaining zoning approval; and (3) § 900 for failing to obtain a certificate of appropriateness from the HPC.

In December 2019, plaintiffs applied for a zoning permit to "replace [the] existing [six-foot] wide concrete [walkways] in front yard of residence with [six-foot] wide concrete block paver walkways." The application was denied because plaintiffs had not submitted (1) three copies of the required property survey/site plan, identifying the existing conditions of the Property, and identifying the walkways to be constructed, and (2) a copy of the lot coverage calculations displaying compliance with the lot coverage requirement. Plaintiffs also did not display compliance with the LDO. Lastly, plaintiffs had not remediated the zoning violations, and therefore were subject to continued enforcement of the Ordinance penalty provisions.

5

In early 2020, the two complaints concerning the construction of the walkways without prior Board approval were dismissed. The parties were directed to resolve the remaining complaint concerning plaintiffs' failure to obtain a COA. The matter was stayed pending the outcome of plaintiffs' application with the HPC.

A year later, in December 2020, plaintiffs filed an application with the HPC for a COA, seeking retroactive approval for the existing three concrete unit paver walkways. Plaintiffs also stated that "[i]nstallation of walkways did not require a [T]ownship construction permit nor [T]ownship [Z]oning [B]oard of [A]djustment nor [T]ownship Planning Board approval." Plaintiffs also included photographs of the walkways and a copy of the December 17, 2019 zoning permit denial.

The HPC held a public hearing on plaintiffs' application for a COA for the installed walkways in the Historic Flare. No witnesses were presented. Plaintiffs' counsel presented the application before the HPC, which did not include a site plan or the settlement agreement for review.

Six members of the HPC voted to deny the application, with an abstention by one member, which was memorialized in a January 12, 2021 resolution. The HPC concluded

the removal and replacement of the preexisting poured concrete walkways within the flare, and the installation of a third walkway, all constructed with the same concrete paver material, is historically inappropriate and violates the Design Guidelines that provide[s] that once a non-conforming structure within the [Historic Flare] is removed, it shall not be replaced.

The HPC explained that the COA was not appropriate for three reasons: (1) "the removal of the concrete walkway within [the Historic Flare] amounted to a destruction of a preexisting non-conforming walkway," which could not be replaced once it was destroyed; (2) the new walkways were "inconsistent with the size limitations of [§] R of the Design Guidelines" and "hardscape in [the Historic Flare] is discouraged under all circumstances"; and (3) the concrete pavers were "not historically consistent with respect to form, shape[,] or color."

Plaintiffs subsequently appealed from the HPC's denial of the COA to the Board. They did not seek any variances, waivers, or alternative forms of relief from the Board.

In January 2022, the Board held a public hearing on plaintiffs' appeal and heard testimony from two witnesses: William Taylor and HPC Chairperson Deborah Osepchuk. The Board also heard argument from HPC's attorney Steven Tombalakian.

7

Osepchuk testified that plaintiffs' initial application for a COA did not include a request nor approval to conduct any sidewalk work. She explained that the HPC's resolution addressed plaintiffs' application in "great detail." She further explained that an HPC resolution "never uses a broad term like all exterior work" because it would provide an applicant "carte blanche to do then whatever they please." In addressing whether the HPC interprets the Design Guidelines, Osepchuk stated the "HPCE preserves the spirit of Ocean Grove aesthetically and also historically." In the areas where the Design Guidelines are not specific, as in plaintiffs'' application, the HPC "[went] back to walkways from years ago and the interpretation ha[d] always been the same."

Osepchuk also explained the COA the process when the Association has consented to an easement on its land. An applicant would receive a letter from the Association granting the easement, which demonstrates to the HPC that the owner has given consent. Here, plaintiffs did not have the Association's consent to replace the two existing walkways and install a third walkway. Also, the HPC did not have the authorization to enter a settlement without the Association's express knowledge or approval.

Tombalakian argued the HPC interpreted and applied the Design Guidelines consistent with the zoning laws. He further argued plaintiffs

8

"destroyed" the walkways that belong to the Association and could not be replaced with approvals. Further, plaintiffs installed "modern" pavers without an approval or variance from the Board. Finally, the Township would not have entered a settlement agreement that allowed for construction of the Association's property when it was not a part of the settlement negotiations. Moreover, at the HPC hearing, plaintiffs' counsel stated the settlement agreement and the agreement with the Municipal Court was not "part of [plaintiffs'] application" and he was "not ready to discuss it."

When questioned by a Board member, William admitted he did not contact the Association for authorization to remove and reinstall the walkways. He explained that he did not obtain a COA from the HPC for the walkways because he thought the installation and location of the concrete unit pavers was a "part of the same process" to renovate the "interior and exterior on th[e] property" and the settlement agreement. William also admitted that he did not contact the HPC for approval of the materials to be used for the walkway. Lastly, he did not seek approval from the HPC because of "bias" with the application process.

Following the hearing, seven members of the Board unanimously voted to deny plaintiffs' appeal. In the resolution, the Board detailed the procedural history of plaintiffs' application and summarized the testimony of witnesses and

A-3709-22

evidence. The resolution also set forth the Board's findings and conclusion that the granting of the approval of a COA would cause "substantial detriment to the public good" and would "substantially impair the intent and purpose of the zoning ordinance and zoning plan of the [Township] and [Ocean Grove] as affixed to the National Historic Register."

Plaintiffs subsequently filed a complaint in lieu of prerogative writs seeking a review of the Board's affirmance of the HPC's denial of the COA.[4] Thereafter, plaintiffs moved for summary judgment. Defendants opposed and cross-moved for summary judgment. In a comprehensive oral opinion, the trial court denied both parties' motions on April 28, 2023.

In denying plaintiffs' motion, the court held that plaintiffs failed to identify how or why § 900(B) and § 902(A) are inconsistent with the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -65. The court reasoned that § 900(B) requires the zoning officer to submit to the HPC all plans for the construction, alteration, repair, restoration, or demolition of structures within the Historic Zone District. The court found that the HPC's automatic review of plans or applications that affect structures or property in the historic districts

---

[4] Neither party included a copy of the complaint in lieu of prerogative writs filed in their appendix.

before the Board was "fully in line" with the MLUL's requirement under N.J.S.A. 40:55D-111. The court similarly held that § 902(A)'s requirement that any applications for exterior alterations on existing structures or other improvements, including walkways, on historic properties be referred to the HPC was "clearly provided for" in N.J.S.A. 40:55D-111.

The court also found plaintiffs failed to show § 906, which enables residents to directly appeal to the Board from the HPC's determinations, is incongruent with the MLUL. The court stated the MLUL does not explicitly grant zoning boards the authority to hear appeals from HPC determinations without an accompanying action by an administrative officer. The court reasoned the Township was not barred from providing the right of appeal from HPC's determinations under the proper, liberal construction of a municipality's powers under the New Jersey Constitution. Thus, § 906 gave Township's residents the same statutory rights articulated in the MLUL.

Following a trial on the record, the court rendered an oral opinion on June 20, 2023, affirming the Board's decision and denying plaintiffs' complaint in lieu prerogative writs. The court rejected plaintiffs' argument that both the HPC and the Board incorrectly interpreted § 413.02(B), that the access walkway in that

A-3709-22

section could be read as a plural, access walkways, because it was contrary to the clear intent of that section to restrict the structures placed on the flared area.

The court also rejected plaintiffs' argument that the HPC's "narrow interpretation" of § 413.02(B) was arbitrary, capricious, and unreasonable, finding the Historic Flare "has been recognized as a unique area covered by the goals and interests of historic preservation" and appropriately "limit[s] and restrict[s] what may or may not be done in that space." The court reasoned "there was no evidence or testimony presented . . . pictures, expert testimony, that would indicate that the material . . . used by plaintiff . . . and the walkways that were built . . . [were] consistent with the design guidelines applicable to the [Historic Flare]." Citing the purpose and establishment of the HPC, the court stated the HPC was "charged not only with the duty, but also with the knowledge to preserve the historical character of Ocean Grove . . . a historical district, and in particular in this case, the historical uniqueness of the flared open space area."

As to the Board, the court found it properly relied on the HPC's findings based on their knowledge and experience with the character of the historical district. Thus, the Board properly found the concrete unit pavers were "not consistent with the color and size that would have been used for that period." The court further noted that the concrete pavers "would not be unreasonably

A-3709-22

found to not look like brick pavers." Regarding the third U-shaped walkway, the court determined it was undisputed that walkway was not preexisting and was built without permits. This appeal ensued.

II.

Plaintiffs raise the following arguments on appeal:

> POINT I: NEPTUNE TOWNSHIP ORDINANCE [§] 900[(B)] AND [§] 902[(A)], AS AMENDED, ARE NOT AUTHORIZED BY THE MUNICIPAL LAND USE LAW, ARE ULTRA VIRES AND VOID.
>
> POINT II: NEPTUNE TOWNSHIP ORDINANCE [§] 906 AUTHORIZING A DIRECT APPEAL OF HISTORIC PRESERVATION COMMISSION DETERMINATIONS TO THE ZONING BOARD OF ADJUSTMENT IS NOT AUTHORIZED BY THE MUNICIPAL LAND USE LAW, IS ULTRA VIRES AND VOID.
>
> POINT III: THE LAW DIVISION ERRED IN HOLDING THE TOWNSHIP OF NEPTUNE LAND DEVELOPMENT ORDINANCE LIMITED TO ONE THE NUMBER OF WALKWAYS PERMITTED IN THE HISTORIC FLARED OPEN SPACE AREA.
>
> POINT IV: THE LAW DIVISION ERRED IN HOLDING THAT THE DESIGN CRITERIA AND GUIDELINES INCORPORATED INTO THE TOWNSHIP OF NEPTUNE LAND DEVELOPMENT ORDINANCE LIMITED THE SIZE, SHAPE AND COLOR OF CONCRETE UNIT PAVERS.

A-3709-22

We recognize a court's review of a zoning board's decision is limited. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). Zoning board decisions constitute quasi-judicial actions of municipal administrative agencies, Cent. 25, LLC v. Zoning Bd., 460 N.J. Super. 446, 464 (App. Div. 2019), and are presumptively valid. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002). "[B]ecause of their peculiar knowledge of local conditions," zoning boards "must be allowed wide latitude in the exercise of delegated discretion" and "[c]ourts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will [courts] exercise anew the original jurisdiction of such boards or trespass on their administrative work." Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965); see also N.Y. SMSA v. Bd. of Adjustment, 370 N.J. Super. 319, 331 (App. Div. 2004).

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as . . . the trial court.'" Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "We have long recognized that zoning boards, 'because of their peculiar knowledge of local conditions[,] must be

14

allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer, 45 N.J. at 296). However, we review de novo a board's conclusions of law. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993). Thus, we exercise plenary review of a board's interpretation of the MLUL, N.J.S.A. 40:55D-1 to -65. See Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (stating a court is "'in no way bound by an agency's interpretation of a statute'" (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973))); Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 146 (App. Div.) (reviewing de novo board of adjustment's interpretation of MLUL), certif. denied, 215 N.J. 485 (2013).

In Point I and II, plaintiffs argue that § 900(B), § 902(A), and § 906 are "ultra vires" and unauthorized by the MLUL. In regard to § 906, plaintiffs further argue the Board is not statutorily authorized to hear direct appeals from the HPC. We conclude plaintiffs' arguments are unavailing.

A.    The Township's Zoning Ordinances

We note, initially, plaintiffs did not properly raise those arguments before the trial court and now raise those points on appeal. At the beginning of its oral decision, the trial court defined the substantive issue as agreed upon by the

15                                                          A-3709-22

parties—"whether the denial by [the Board] of appeal of [the HPC's] denial of the [COA] was arbitrary and capricious." "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Thus, we reject plaintiffs' challenges to the ordinances. We, nevertheless, also address plaintiffs' arguments substantively. Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023).

"Zoning ordinances may '[p]rovide for historic preservation.'" Id. at 356 (quoting N.J.S.A. 40:55D-65(i)). N.J.S.A. 40:55D-65.1 provides "[a] zoning ordinance may designate and regulate historic sites or historic districts and provide design criteria and guidelines therefor." "While municipalities are empowered 'to place their local imprint on historic site and district selection,' their actions 'must be exercised according to the enabling authority and local planning and zoning scheme provided by' the MLUL." Berardo, 476 N.J. Super. at 356 (quoting Est. of Neuberger v. Twp. of Middletown, 215 N.J. Super. 375, 381-82 (App. Div. 1987)).

It is undisputed the Property is located in a Historic District Oceanfront and governed by the National Historic Register and Article IX - Historic Preservation Provisions and Procedures of the LDO. Here, Article Nine sets forth the proper procedure for obtaining a COA to remove and replace walkways on a property in a Historic Zone District consistent with N.J.S.A. 40:55D-111. Specifically, § 900(A) establishes the process to obtain a COA and § 900(B) grants the zoning officer or his designee the right to review and submit the plans for repair, restoration, or demolition to the HPC. An application for an exterior alteration or "other improvements . . . including, but not limited to . . . walks . . ." is subject to review by the HPC as mandated by § 902(A).

We also reject plaintiffs' argument that a direct appeal from the HPC is ultra vires and contravenes the MLUL. Again, § 906 provides that "[a]ny decision by [the HPC] to deny a [COA] . . . may be appealed to [the Board] in the manner set forth in [§] 706 (Appeals and applications to the ZBOA of the Zoning Ordinance)." Also, N.J.S.A. 40:55D-70(a) grants the Board the power to "[h]ear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision or refusal made by an administrative officer based on or made in the enforcement of the zoning ordinance." Thus, the MLUL contemplates appeals from determinations made by zoning or

administrative officers or designated municipal commissions.  See Berardo, 476 N.J. Super. at 360 (holding that the plain language of N.J.S.A. 40:55D-70.2 "clearly applies only to determinations 'by the administrative officer pursuant to a report submitted by the historic preservation commission or planning board in accordance with' N.J.S.A. 40:55D-111").

For those reasons, we hold the Township's ordinances are consistent with the intent, purpose, and statutory framework of the MLUL concerning historic preservation.  We agree with the trial court that the matter has a "peculiar" and "unique" posture since the Township's ordinances contemplate plaintiffs' application would "predate" and "precede" the installation of the walkways. Here, plaintiffs circumvented the process and then retroactively applied for a COA.

We further conclude the trial court properly ruled, as a matter of law, the Board was authorized to hear a direct appeal from the HPC.  As noted above, the Township's procedure is in accordance with the MLUL under N.J.S.A. 40:55D-70(a) or N.J.S.A. 40:55D-70.2, and the Board properly exercised its municipal governing power.

B.    Trial Court's Determination Upholding the Board's Denial

Plaintiffs argue the trial court incorrectly interpreted § 413.02(B) in upholding the Board's denial of plaintiffs' application. We are unpersuaded by plaintiffs' contention.

The New Jersey Constitution requires any law concerning the powers of municipalities be liberally construed in their favor so as to include those powers expressly conferred by the Legislature or otherwise fairly implied. D.L. Real Estate Holdings, LLC v. Point Pleasant Beach Planning Bd., 176 N.J. 126, 132 (2003) (citing N.J. Const. art. IV, § 7, ¶ 11). Thus, "[m]unicipal ordinances, like statutes, carry a presumption of validity." Newfield Fire Co. No. 1 v. Borough of Newfield, 439 N.J. Super. 202, 209 (App. Div. 2015) (quoting Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564 (1975)). "Accordingly, a party challenging a municipal ordinance has a heavy burden[,]" ibid., and "an ordinance may be overturned only if it is arbitrary and unreasonable." Hudson County v. Jersey City, 153 N.J. 254, 266 (1998).

Municipalities may not enact an ordinance that violates the federal or state constitution. Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 351 (2003) (citation omitted). Therefore, "[a]s with other legislative provisions, the meaning of an ordinance's language is a question of law that [is]

19

review[ed] de novo." Berardo, 476 N.J, Super. at 358-59 (quoting Bubis v. Kassin, 184 N.J. 612, 627 (2005)).

The Township's LDO addresses the ornamentation of flared avenue open spaces areas in § 413.02(B), which provides that "[a]side from an access walkway and sidewalk no greater than six feet . . . in width . . . no structures may be placed within, or may project into, the area defined as the Historic Flared Avenue Open Space area. The area between the curb and the sidewalk shall be maintained as a planted grass strip."

We agree with the trial court that the plain language of § 413.02(B) evinces an intent to limit the type and number of walkways in the Historic Flare to preserve its historical character. The restrictive clause of § 413.02(B) limits "an access walkway and sidewalk" to the Historic Flare area, such that "no structures may be placed within, or may project into, the area defined as [the Historic Flare] area." This does not include walkways in the plural. We conclude the trial court's interpretation of that ordinance is consistent with the MLUL, and the decision to uphold the ordinance was not arbitrary, capricious, or unreasonable.

Here, plaintiffs' application did not show the two pre-existing non-conforming walkways needed repair because of Sandy; rather, they were

destroyed when the concrete slabs were removed to install the concrete pavers. Plaintiffs also failed to present any evidence or expert testimony that the "modern" gray concrete pavers were consistent with the Design Guidelines. After considering the parties' arguments and record on appeal, we hold the trial court properly upheld the Board's determination in dismissing plaintiffs' complaint. We see no cause to disturb the court's ruling.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3709-22